NO. 12-99-00305-CR



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS




KENNETH WAYNE BOYD, JR.
§
 APPEAL FROM THE 273RD

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 SHELBY COUNTY, TEXAS






 

 A jury found Appellant, Kenneth Wayne Boyd, Jr., guilty of the offense of capital murder,
and the trial court assessed his punishment at life imprisonment. Appellant raises ten issues. We
affirm.


Background

 In the Spring of 1997, Percy Keith Moore ("Percy") lived with his wife, Bridgette Moore
("Bridgette"), and her twelve-year-old sister, Christy Calhoun ("Christy"), in a house in Center,
Texas. Percy's sister, Vivian Watts ("Vivian"), her husband, and her daughter, Calandra Watts
("Calandra"), lived in a trailer house situated directly behind Percy's house. Minutes before 
midnight on April 22, 1997, Vivian and Calandra heard noises coming from the rear of Percy's
house and looked out their windows to see an unknown black man chasing Percy out his back door. (1) 
Percy stumbled and fell, and the man, standing over Percy, said, "I got you, Keith." Vivian opened
her front door and shouted at her brother, but slammed the door when she saw that the other man had
a long gun. Calandra watched through her bedroom window as the man shot Percy in the head and
then ran back through Percy's house to meet another man on the driveway in front.

 Moments later, the Watts' house was sprayed with bullets. Calandra was hit in the knee, and
Vivian was hit in the buttocks. Vivian called 911.

 Derrick Brown ("Brown") and Daryl Lynn Rushing ("Daryl Lynn") both claimed to be in the
vicinity of Percy's house at the time of the murders. Shortly after he heard the gunshots, Brown saw
two black people wearing black clothing, running across the cemetery adjacent to Percy's house. 
Daryl Lynn heard at least two distinct bursts of gunfire and saw "silhouettes of people" running
through the cemetery between the volleys.

 Anita Ross ("Ross"), another of Percy's sisters, and Yvain Rushing ("Yvain"), Daryl Lynn's
brother, were together at Yvain's nearby house when they heard gunfire. They started walking
toward Percy's house, but Bridgette, returning home from work in her car, got there first. Bridgette,
unaware that anything was amiss, went into the house through the front door. She saw Christy lying
on the living room couch with a pillow over her head and assumed that the child was asleep. Then
Bridgette noticed the dead body of Percy's cousin, Brian Keith Brooks ("Brian"), lying face down,
half in the living room and half in the den. Frightened, Bridgette ran out of the house and met Ross
and Yvain in the yard. Bridgette, accompanied by either Ross or Yvain, reentered the house. (2) When
Bridgette saw that her sister was dead, too, she left the house again. Screams drew the three of them
to the back of the house where they discovered that Vivian and Calandra had been shot and where
Percy's dead body lay.

 Bridgette testified that Percy was a drug dealer. When Bridgette left for work on the day of
the murders, there was a quantity of cocaine in the house and a shoe box containing about five
thousand dollars in cash. After the murders, the drugs, the shoe box, and the cash were gone.

 Center Police Department officers were on the scene within minutes of the shootings. They
found fifteen spent shell casings which were subsequently determined to have been fired from the
same SKS-type assault rifle. However, no gun matching the shell casings was ever recovered. Law
enforcement officers lifted fingerprints at the crime scene, but were unable to match them to any
suspects.

 Ross testified that she had seen Appellant in Percy's house with another unknown man a
couple of hours before the murders. Brown testified that he had seen Appellant and Rodney Moore
("Moore") drive by Percy's house several times on April 22, once just minutes after the shootings.

 Eltroy McCowin ("McCowin") was Percy's supplier of illegal drugs. McCowin testified that
Percy told him that he was going to sell some "dope" to Appellant on April 22. Doris Netherly
("Netherly"), another sister of Percy's, testified that Percy told her on the afternoon of April 22, that
he had a meeting with Appellant that night.

 Various witnesses testified that they had seen Appellant and co-defendants Moore, Jacarro
Keion Bennett ("Bennett"), and Ricky Lathan ("Lathan") at the Union Acres Apartments on April
22, 1997, both before and after the murders. There was testimony that the Union Acres Apartments,
which are situated across the cemetery from Percy's house, are less than five minutes away from the
crime scene. Several witnesses testified that Appellant had a gun at Union Acres that night. 

 Rosalyn Crawford ("Crawford") lived next door to Yoronda Rochelle Jones ("Yoronda") at
Union Acres in April of 1997. At about midnight on the night of the murders, Appellant and Moore
knocked on Crawford's door, looking for Yoronda. Though the night was cool, Appellant was not
wearing a shirt. Crawford said Appellant was out of breath and appeared to have been running. 
Crawford told Appellant and Moore that Jones lived next door, and they left.

 Charles Evans ("Evans"), Christopher Isaac ("Isaac"), Yoronda, and her sister, Shekinula
Jones ("Shekinula"), testified that Appellant and Moore came to Jones' apartment about midnight
on the night of the murders to pick up Bennett and Lathan, who had been there for some time. The
witnesses verified that Appellant was sweaty and shirtless. Shekinula disagreed with the other
witnesses about the exact length of time Appellant and Moore stayed at Yoronda's apartment before
leaving with Bennett and Lathan, but all of them agreed it was a short period of time.

 The State also presented testimonial evidence that Appellant admitted participation in the
murders to more than one person. In April 1998, Vernon Garrett ("Garrett") gave a written statement
to law enforcement detailing a conversation he had with Appellant when they were cell mates at the
Shelby County Jail. (3) Garrett testified on direct examination that Appellant admitted that he had shot
Christy and Brian, and that Moore shot Percy and Vivian. Cross examination revealed that, in his
written statement, Garrett said that Appellant shot Percy and Vivian, Moore shot Christy, and Lathan
shot Brian. The prosecutor did not attempt to clarify the conflicting testimony on redirect, and the
written statement is not in the record.

 Michael Ethridge ("Ethridge") was incarcerated in the Shelby County jail in January of 1998. 
Ethridge testified that when they were cell mates, Appellant told Ethridge that he had been involved
in the murders. Appellant related to Ethridge that he, Moore, Bennett, Lathan, and Vincent
Cartwright drove to Percy's house. Appellant and Moore got out, and the others drove away.
Appellant shot Percy and Christy, and Moore shot Brian.


Sufficiency of the Evidence

 In his first issue, Appellant argues that the evidence is legally and factually insufficient to
support his conviction. 

Legal Sufficiency

 The standard of review for legal sufficiency of the evidence is whether, viewing the evidence
in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.
Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Whitaker v. State, 977 S.W.2d 595, 598 (Tex. Crim. App.
1998). An appellate court should uphold the jury's verdict "unless it is found to be irrational or
unsupported by more than a mere modicum of evidence." Moreno v. State, 755 S.W.2d 866, 867
(Tex. Crim. App. 1988). All conflicts in the evidence should be resolved in favor of the verdict, and
every reasonable inference indulged. Sneed v. State, 803 S.W.2d 833, 837 (Tex. App.-Dallas 1991,
pet. ref'd). The jury is the exclusive judge of the credibility of the witnesses and of the weight to be
given their testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Likewise,
reconciliation of conflicts in the evidence is within the exclusive province of the jury. Losada v.
State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). 

 Sufficiency of the evidence should be measured by the elements of the offense as defined by
the hypothetically correct jury charge for the case. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.
App. 1997). Such a charge would be one that accurately sets out the law, is authorized by the
indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the
State's theories of liability, and adequately describes the particular offense for which the defendant
was tried. Id. Malik controls sufficiency of the evidence analysis even in the absence of alleged jury
charge error. See Gollihar v. State, 46 S.W.3d 243, 252-253 (Tex. Crim. App. 2001).

 A person commits the offense of murder if he intentionally or knowingly causes the death of
an individual. Tex. Pen. Code Ann. § 19.02(b) (Vernon 1994). A person commits the offense of
capital murder if he commits murder as defined by the penal code and (1) he intentionally commits
the murder in the course of committing or attempting to commit robbery or (2) he murders more than
one person during the same criminal transaction. See Tex. Pen. Code Ann. § 19.03(a) (Vernon
1994). In this case, the indictment alleged that Appellant committed capital murder by intentionally
murdering Christy Calhoun, and two other individuals, Percy Keith Moore, and Brian Keith Brooks
during the same criminal transaction and in the course of committing or attempting to commit
robbery. The charge in the record included an instruction on the law of parties and required the jury
to find either that Appellant intentionally murdered Christy, Percy, and Brian during the same
criminal transaction or that Appellant intentionally murdered Christy, Percy, and Brian during the
same criminal transaction and during the course of committing or attempting to commit robbery. (4) 
However, this unnecessarily increased the State's burden of proof. Under the indictment, the
hypothetically correct jury charge would have required that the jury find Appellant guilty of capital
murder if it found that Appellant-as principal or as a party--murdered at least two of the three victims
during the same criminal transaction or intentionally murdered one of the three victims during the
course of committing or attempting to commit a robbery. Anderson v. State, 717 S.W.2d 622, 632
(Tex. Crim. App. 1986); Zanghetti v. State, 618 S.W.2d 383 (Tex. Crim. App. 1981).

 Viewing the evidence in the light most favorable to the verdict, we hold that a rational trier
of fact could have found beyond a reasonable doubt that Appellant committed the offense of capital
murder. The record reflects that the three victims were murdered at approximately the same time. 
 Calandra and Vivian testified that the man who shot Percy was stockily built and wearing a white
or light-colored muscle shirt and dark or black shorts. Numerous witnesses testified that Appellant
wore clothing that night that fit the description given by Calandra and Vivian, and many witnesses
testified that Appellant was stockily built. There was evidence that Appellant was in the area at the
time of the murders. 

 We resolve the conflicting evidence about Appellant's extrajudicial admissions to Garrett and
Ethridge in favor of the verdict. The jury could have reasonably inferred from Garrett's testimony
on direct examination that Appellant murdered Christy and Brian and was a party to Percy's murder. 
Alternatively, the jury could have reasonably inferred from Garrett's testimony on cross-examination
that Appellant murdered Percy and was a party to Christy's and Brian's murders. Further, the jury
could have reasonably concluded from Ethridge's testimony that Appellant murdered Christy and
Percy and was a party to Brian's murder. It was within the exclusive province of the jury to reconcile
the conflicting evidence and then weigh the evidence coupled with the other evidence recounted
above. Under any of the possible scenarios, however, there was more than a scintilla of evidence that
Appellant either killed two of the three victims himself or was a party to the slayings. Therefore, we
hold that there was legally sufficient evidence to support the jury's verdict. (5)

Factual Sufficiency 

 Next we move to factual sufficiency review. When reviewing the factual sufficiency of the
evidence, we must ask whether a neutral review of all the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's
determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). We review the evidence
weighed by the jury that tends to prove the existence of the elemental fact in dispute and compare it
with the evidence that tends to disprove that fact. Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim.
App. 1996). We review the fact finder's weighing of the evidence and are authorized to disagree with
the fact finder's determination. Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). This
review must employ appropriate deference to prevent an appellate court from substituting its
judgment for that of the fact finder, and any evaluation should not substantially intrude upon the fact
finder's role as the sole judge of the weight and credibility to be given to the testimony of the
witnesses. Jones, 944 S.W.2d at 648.

 The degree of deference a reviewing court provides must be proportionate with the facts it can
accurately glean from the trial record. Johnson, 23 S.W.3d at 8. A factual sufficiency analysis can
consider only those few matters bearing on credibility that can be fully determined from the cold
appellate record. Id. Such an approach occasionally permits some credibility assessment but usually
requires deference to the jury's conclusion based on matters beyond the scope of the appellate court's
legitimate concern. Id. Unless the available record clearly reveals a different result is appropriate,
an appellate court must defer to the jury's determination concerning what weight to give contradictory
testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, and
those jurors were in attendance when the testimony was delivered. Id. This evidence is then accorded
the appropriate consideration by the reviewing court in the context of its overall analysis of the
relevant evidence. Id. at 8-9.

 The reviewing court must always remain cognizant of the fact finder's role and unique
position, a position that the reviewing court is unable to occupy. Id. The authority granted in Clewis
to disagree with the fact finder's determination is appropriate only when the record clearly indicates
such a step is necessary to arrest the occurrence of a manifest injustice. Id. Otherwise, due deference
must be accorded the fact finder's determinations, particularly those determinations concerning the
weight and credibility of the evidence. Jones, 944 S.W.2d at 648-49. 

 Our review of the record reveals conflicting evidence. On appeal, as at trial, Appellant's
primary complaint is the State's failure to prove the identity of Appellant as the murderer. Appellant,
focusing on the witnesses' description of the man who killed Percy and the conflicting evidence of
Appellant's whereabouts on the night of the murders, avers the proof of guilt is so weak that it
undermines confidence in the jury's determination and that the proof of guilt is greatly outweighed
by contrary proof. We disagree.

 The evidence showed that a security light on a pole between the Watts' house and Percy's
house was lit at the time of the shootings, and Vivian and Calandra both maintained they got a good
look at the shooter. Both Vivian and Calandra said the man who shot Percy was a stockily built black
man with a light complexion, wearing a light-colored muscle shirt and dark shorts. Numerous
witnesses testified that Appellant was wearing clothes such as Vivian and Calandra described on the
night of the murders. Of course, the jury could see for itself whether Appellant is a stockily built
black man, but numerous witnesses agreed that he is.

 Appellant disputes Vivian and Calandra's identification of Appellant as the shooter. 
Appellant produced evidence before the jury that Calandra had poor eyesight, but Calandra explained
that she could see that night by "squinting." Appellant produced evidence before the jury that the
description Calandra gave of the shooter from her hospital bed was not consistent with her description
at trial or with her mother's description of him. However, Calandra testified she did not remember
even talking to a Texas Ranger when she was in the hospital, much less describing the suspect to him. 
Calandra's medical records confirmed her testimony that she was on pain medication at the time of
the interview. Furthermore, Vivian's description of the shooter to the responding police officers was
consistent with her trial description.

 By his questions to witness after witness, Appellant made much of the fact that Appellant is
apparently not a light-skinned black man. We note that the term "light skinned" was injected into the
case by Vivian and Calandra. Importantly, we note that Vivian testified at trial that Appellant has
lighter skin than she. At least by Vivian's definition, Appellant is apparently light skinned. The jury,
of course, could see for itself what we cannot see in the written record.

 Appellant points to conflicting evidence of what car, if any, Appellant and his three co-defendants may have been riding in on the night of the murders. Appellant put on several witnesses
to explain the whereabouts of the various cars they allegedly were in. Appellant put on evidence
through several witnesses that he was actually in Center on Monday night, April 21, 1997, and was
in Jacksonville, Texas, on April 22. As to both scenarios, the jury was in the best position to judge
the credibility of various witnesses and decide what weight to give their testimony.

 Appellant repeatedly points to what he avers is contrary proof which the State itself presented
in the form of the videotaped testimony of Omar Gardner ("Gardner"). Gardner testified he saw a
white pickup truck circling the area shortly before the shootings. Gardner said the white truck
stopped at Percy's and at least two men got out and hurried inside. Gardner, who was crossing the
cemetery on his way home, heard the shots and began to run through the cemetery. Gardner said he
saw Yvain Rushing driving the white truck the next morning. Again, the jury was in the best position
to weigh this evidence, judge Gardner's credibility, and decide if Gardner's story conflicted with the
other evidence of guilt offered by the State. 

 After a neutral review of all the evidence, we find that the proof of guilt is neither so
obviously weak as to undermine confidence in the jury's determination nor greatly outweighed by
contrary proof. We cannot say the record clearly reveals that a different result is appropriate. Finding
no manifest injustice apparent, we hold that the evidence was factually sufficient to support the jury's
verdict. Appellant's first issue is overruled.


Hearsay

 In his second issue, Appellant alleges the trial court erred by allowing impermissible hearsay
testimony from Derrick Brown. The State counters that the statement was an exception to hearsay
under Rule 803(24). See Tex. R. Evid. 803(24). Alternatively, the State argues that the offending
statement is not hearsay because it was Appellant's own statement offered against Appellant himself. 
See Tex. R. Evid. 801(e)(2)(A). The record reveals that the trial court admitted the statement under
Rule 803(24).

 Hearsay is a statement, other than one made by the declarant while testifying at the trial or
hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d). Rule of
Evidence 803(24) provides that a statement against the declarant's penal interest may be admissible
if corroborating circumstances clearly indicate the statement's reliability. See Tex. R. Evid. 803(24). 

 We review a trial court's decision to admit or exclude a statement under rule 803(24) for an
abuse of discretion. See Dewberry v. State, 4 S.W.3d 735, 751 (Tex. Crim. App. 1999), cert. denied,
529 U.S. 1131, 120 S. Ct. 2008, 146 L. Ed. 2d 958 (2000); Holiday v. State, 14 S.W.3d 784, 787
(Tex. App.-Houston [1st Dist.] 2000, pet. ref'd), cert. denied, __U.S.__, 121 S. Ct. 1491, 149 L. Ed.
2d 377 (2001). If a hearsay statement is admissible under a "firmly rooted" exception to the hearsay
rule, reliability, for purposes of the Confrontation Clause, can be inferred. Idaho v. Wright, 497 U.S.
805, 816, 110 S. Ct. 3139, 3147, 111 L. Ed. 2d 638 (1990). The Court of Criminal Appeals has held
that a statement against penal interest under rule 803(24) is a firmly rooted exception to the hearsay
rule. See Dewberry, 4 S.W.3d at 753; Guidry v. State, 9 S.W.3d 133, 150 (Tex. Crim. App. 1999),
cert. denied, 531 U.S. 837, 121 S. Ct. 98, 148 L. Ed. 2d 57 (2000); but see Lilly v. Virginia, 527 U.S.
116, 127, 119 S. Ct. 1887, 1895, 144 L. Ed. 2d 117 (1999) (plurality opinion) ("[S]imple
categorization of a statement as a 'declaration against penal interest . . . defines too large a class for
meaningful Confrontation Clause analysis.' "). An admission against the declarant's penal interest
may be admissible against a co-defendant as long as it is sufficiently against the declarant's own
interest to be reliable. Dewberry, 4 S.W.3d at 751. 

 Brown was a cell-mate of Moore's in the Shelby County Jail some time after the murders. 
Brown testified at a pre-trial hearing that while they were incarcerated together, Moore told Brown
that Appellant wanted Moore to claim responsibility for killing the child victim, Christy. Moore told
Brown that he killed Brian, and Appellant killed Christy and Percy. Inexplicably, at Appellant's trial,
Brown only recounted part of the admission. Brown told the jury, "[Moore] told me that [Appellant]
was trying to get [Moore] to say he killed the little girl." Clearly, the statement is hearsay, and the
State's contention that it is not, is wholly without merit. Furthermore, Brown did not relay to the jury
that part of Moore's admission to him which was inculpatory of Moore, i.e., that Moore killed Brian. 
Therefore, we hold that the trial court abused its discretion by admitting the statement under Rule
803(24).

 A violation of the Confrontation Clause is subject to harmless error analysis. Chapman v.
California, 386 U.S. 18, 24, 87 S. Ct. 824, 828, 17 L. Ed. 2d 705 (1967). If the record reveals
constitutional error that is subject to harmless error review, we must reverse the judgment of
conviction unless we determine beyond a reasonable doubt that the error did not contribute to the
conviction. See Tex. R. App. P. 44.2(a). In applying this standard of review, we do not look for
overwhelming evidence of guilt because it is improper for an appellate court to substitute its judgment
for that of the factfinder. Harris v. State, 790 S.W.2d 568, 585 (Tex. Crim. App. 1989). Instead, we
focus on the error and its possible impact. Id. at 586-88. "If the error was of a magnitude that it
disrupted the [factfinder's] orderly evaluation of the evidence, no matter how overwhelming it might
have been, then the conviction is tainted." Id. at 588. To perform a harmless error analysis, an
appellate court should consider the following factors: 1) the source of the error; 2) the nature of the
error; 3) whether the error was emphasized and its probable collateral implications; 4) the weight a
juror would probably place upon the error; and 5) whether declaring the error harmless encouraged
the State to repeat it with impunity. Orona v. State, 791 S.W.2d 125, 128 (Tex. Crim. App. 1990). 
Though no one factor is dispositive, the existence and severity of these factors are indicative of the
harm caused by the error. See Wilson v. State, 938 S.W.2d 57 (Tex. Crim. App. 1996).

 After reviewing the record in its entirety, we conclude that the error in admitting Moore's
statement to Brown was harmless. The incomplete character of Brown's trial testimony is paramount
in our analysis. Brown did not tell the jury that Moore claimed that Appellant killed Christy and
Percy. Further, Brown's testimony about Moore's statement was not emphasized by the State during
the rest of the trial or at argument. In light of the testimony of Garrett and Ethridge and the other
evidence of Appellant's guilt, we hold that the error was harmless. Appellant's second issue is
overruled.


The Disputed Testimony of Ranger Tom Davis

 In his third issue, Appellant complains that the trial court erred by allowing Texas Ranger
Tom Davis to give lay opinion testimony. The State contends that error, if any, is not preserved. We
agree.

 When asked at trial if another Texas Ranger interviewed Calandra from her hospital bed,
Ranger Davis replied, "It was a cursory interview. Ms. Watts was medicated pretty heavily at the
time." Appellant's trial objection based on speculation was overruled. The State argues that error,
if any, is not preserved because Appellant's issue on appeal does not comport with his trial objection. 
See Tex. R. App. P. 33.1. Appellant frames the issue on appeal as error due to impermissible lay
opinion testimony in violation of Rule 701 of the Rules of Evidence. See Tex. R. Evid. 701. This
issue does not comport with Appellant's trial objection. (6) Therefore, we hold that error, if any, is not
properly preserved, and we overrule Appellant's third issue. 

 In his fourth issue, Appellant presents us with a multifarious complaint based on the
admission of another part of Ranger Davis' testimony. The State contends that error, if any, is not
preserved because Appellant did not object to the ultimate question resulting in the offending answer
and because the offending testimony is not hearsay. At trial, Appellant objected on the basis of
hearsay to Ranger Davis' testimony that he "learned [from his investigation]" that Appellant and
Moore were in Center on the evening of April 22, 1997. In his motion for new trial, Appellant
complained of "opinion[s] . . . based on hearsay." On appeal, Appellant avers that the admission of
Ranger Davis' testimony was error because it was impermissible lay opinion testimony based on
hearsay, and, further, Appellant presents arguments and authorities at length complaining of
bolstering. Based on our review of the record, we conclude that Appellant did not properly preserve
the issue of bolstering, but did properly preserve the issues of a Rule 701 violation and hearsay for

our consideration. See Tex. R. App. P. 33.1. However, we reach neither consideration because
evidence that Appellant was in Center on the night of the murders came in through numerous, prior
and latter witnesses without objection. (7) "It is well established that the improper admission of
evidence does not constitute reversible error if the same facts are shown by other evidence which is
not challenged." Leday v. State, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998); Crocker v. State, 573
S.W.2d 190, 201 (Tex. Crim. App. 1978). Appellant's fourth issue is overruled.


The State's Alleged Failure 

To Disclose Deals With Witnesses


 Appellant presents his fifth and sixth issues together. Appellant contends he was denied due
process because the State failed to disclose deals for leniency in pending criminal cases with two of
its witnesses, Vernon Garrett and Michael Ethridge, in exchange for their testimony. Appellant
alleges violation of his due process rights under the Constitution and under Brady v. Maryland, 373
U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 215 (1963). The State avers there is no evidence of secreted deals
in the record. We agree. 

 At the time of Appellant's trial, Garrett was incarcerated in a substance abuse felony
punishment facility of the Texas Department of Criminal Justice. Garrett testified at trial and again
at the hearing on Appellant's motion for new trial that he received no leniency and no deal in
exchange for his testimony. Garrett's attorney testified at the new trial hearing that he was unaware
of any deal, and the District Attorney's Investigator testified at the new trial hearing that he made no
deal with Garrett in exchange for his testimony. 

 At the time of Appellant's trial, Ethridge was incarcerated in the Shelby County Jail on a
motion to revoke his probation. Ethridge testified at trial and at the hearing on Appellant's motion
for new trial that he had previously been granted "shock probation" in exchange for his testimony,
but that he had no deal to dismiss the motion to revoke pending at the time of trial in exchange for
his testimony. The District Attorney's Investigator testified at the new trial hearing that he made no
deal with Ethridge in exchange for his testimony.

 There is simply no evidence in the record of a deal with Garrett. The previous deal with
Ethridge was revealed to the jury. Apparently, the pending motion to revoke Ethridge's probation
was dismissed and Ethridge was released from jail shortly after he testified in the trial. Appellant
avers that this is proof of a deal in exchange for Ethridge's testimony. However, we refuse to engage
in such speculation when there is no evidence in the record of a further deal with Ethridge which was
not disclosed. We simply cannot consider Appellant's arguments about matters outside the record. 
See Tex. R. App. P. 38.1(h). Appellant's fifth and sixth issues are overruled.


Newly Discovered Evidence

 In his seventh and eighth issues, Appellant contends that the trial court abused its discretion
by denying his motion for new trial based on the newly discovered evidence that Derrick Brown and
Michael Ethridge committed perjury at trial.

 A new trial shall be granted an accused where material evidence favorable to the accused has
been discovered since trial. Tex. Code Crim. Proc. Ann. art. 40.001. (Vernon Supp. 2001). The
standard of review for the denial of a motion for new trial based on newly discovered evidence is
abuse of discretion. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995); State v. Gonzalez, 855
S.W.2d 692, 696 (Tex. Crim. App. 1993). Motions for new trial based on newly discovered evidence
are not favored by the courts and are viewed with great caution. Drew v. State, 743 S.W.2d 207,
225-26 (Tex. Crim. App. 1987). We do not substitute our judgment for that of the trial court, but
rather decide whether the trial court's decision was arbitrary or unreasonable. Id. To show that the
trial court abused its discretion in not granting a new trial, the record must reflect that: (1) the newly
discovered evidence was unknown to the movant at the time of trial; (2) the movant's failure to
discover the evidence was not due to his lack of diligence; (3) the evidence is admissible and not
merely cumulative, corroborative, collateral, or impeaching; and (4) the evidence is probably true and
would probably bring about a different result in another trial. Moore v. State, 882 S.W.2d 844, 849
(Tex. Crim. App. 1994); see Drew, 743 S.W.2d at 226.

 At trial, Brown denied that he had ever worked as a paid informant or "snitch" for a law
enforcement agency in connection with the illegal narcotics trade. At the hearing on Appellant's
motion for new trial, officers from the Deep East Texas Regional Narcotics Trafficking Task Force
and from the Department of Public Safety Narcotics Service testified that Brown had been a paid
informant for their agencies on several occasions prior to the trial. 

 At the hearing on Appellant's motion for new trial, Appellant presented testimony that
Ethridge had said before trial that he would lie to help himself. However, Appellant did not put on
evidence that Ethridge actually did lie at trial. 

 Appellant has wholly failed to meet his burden under Moore. Appellant has failed to show
that this evidence was unknown to him at the time of trial or that his failure to discover it was not due
to his want of diligence. Though the evidence that Brown was a paid informant for law enforcement
is undoubtedly true, and the evidence that Ethridge had said he would lie in court is quite possibly
true, both new pieces of evidence are merely impeachment evidence, and neither would likely bring
about a different result in another trial. The trial court did not abuse its discretion by denying
Appellant's motion for new trial based on newly discovered evidence. Appellant's seventh and eighth
issues are overruled.


Prosecutorial Misconduct

Eliciting False Testimony and Secreting Exculpatory Evidence

 In his ninth issue, Appellant complains that the prosecutor knowingly put on false evidence
and violated pre-trial discovery orders, thereby denying Appellant due process of law.

 In response to questioning by the State, Ranger Tom Davis testified at trial that there was no
evidence McCowin was involved in the April 22, 1997 murders. Appellant alleges on appeal that
such statement was untrue and that the State withheld exculpatory evidence in the form of a letter
from a polygraph examiner to Ranger Davis stating that Brown was truthful when he told the
polygraph examiner that McCowin had threatened Percy's life. The State conceded at oral argument
that the letter should have been shared with Appellant before trial as possible Brady material. 

 A prosecutor has an affirmative duty to turn over favorable material to the defense. Brady
v. Maryland, 373 U.S.83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); Little v. State, 991 S.W.2d 864,
866 (Tex. Crim. App. 1999). A prosecutor's failure to provide such material to the defense violates
due process if the prosecutor (1) failed to disclose evidence; (2) favorable to the accused; and (3) the
evidence is material. Thomas v. State, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992).


 The evidence is material only if there is a reasonable probability that, had the evidence been disclosed
to the defense, the result of the proceeding would have been different. A 'reasonable probability' is
a probability sufficient to undermine confidence in the outcome.



United States v. Bagley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d 481 (1985). 

 Though the State did concede at oral argument that the letter is Brady material, the State
maintains that the issue is not properly before this court. We agree. 

 As a general rule, we cannot consider items which are not part of the record from the trial
court. See Tex. R. App. P. 34.1; Raspberry v. State, 535 S.W.2d 871, 873 (Tex. Crim. App. 1976); 
Martin v. State, 492 S.W.2d 471, 472 (Tex. Crim. App. 1973).); White v. State, 456 S.W.2d 935, 936
(Tex. Crim. App. 1970); Kaman v. State, 923 S.W.2d 129, 132 (Tex. App.-Houston [1st Dist.] 1996,
no pet.); see also Pena v. State, 932 S.W.2d 33, 35 (Tex. App.-El Paso 1996, no pet.). Appellant
is attempting to raise matters outside the record by way of attached exhibits to an appendix to his
brief. There was no evidence adduced at trial or at the hearing on Appellant's motion for new trial
about the letter from the polygraph examiner. Therefore, we are unable to address due process
implications of the failure to provide the letter from the polygraph examiner to Appellant. (8) 
Appellant's ninth issue is overruled.

Concealing or Destroying Evidence

 In his tenth issue, Appellant alleges that the prosecutor systematically concealed or destroyed
material impeachment evidence and exculpatory evidence. The State responds that Appellant is
attempting to raise matters outside the appellate record. We agree.

 Appellant questioned the various witnesses at trial about the number of statements they had
given, to whom they had given statements, and whether the statements were written or recorded on
audio or video tape. The prosecutor conceded that some video tapes had been taped over and the 911
tapes had been lost. However, Appellant failed to show that material impeachment evidence or
exculpatory evidence has been concealed or intentionally destroyed. See Thomas, 841 S.W.2d at 404. 
Appellant's tenth issue is overruled.

 The judgment of the trial court is affirmed.


 SAM GRIFFITH 

 Justice



Opinion delivered August 22, 2001.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.

















(DO NOT PUBLISH)
1. They described the man as stockily built with a light complexion, wearing a white or light-colored muscle
shirt and dark or black shorts.
2. Bridgette testified that Yvain reentered the house with her, but Ross and Yvain testified that it was Ross
who went inside the house with Bridgette. 
3. Subsequently, Garrett recanted that statement. Later, he retracted the recantation, and he insisted at trial
that the original statement he gave in April 1998 was true and correct.
4. The actual jury charge was lost before the appeal, so it is not part of the record before us. There is a
charge in the record which the former prosecutor, the clerk, the court reporter, and the prosecutor's secretary all
attest to be an exact copy of the charge submitted to the jury. 
5. Because we conclude the evidence is sufficient to support a finding of multiple murders in the same
criminal transaction, we do not address whether there is legally sufficient evidence that Appellant committed murder
in the course of committing or attempting to commit robbery.
6. From the context of the Appellant's trial objection, one might logically conclude that Appellant was
complaining of a violation of Rule 602 rather than Rule 701. See Tex. R. Evid. 602.
7. Germaine Preston, Sheretta Patton, Aretha McCollister, Charles Evans, Yoronda Rochelle Jones, Cory
Lacy, Jason Calhoun, Christopher Isaac, Anita Ross, Rosalyn Crawford, Christopher Crawford, Shekinula Jones, and
Derrick Brown so testified.
8. Evidence concerning the letter from the polygraph examiner might be developed in a habeas corpus
proceeding.