# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-12-00172-CR
---

**Bruno Trevino, Appellant**

**v.**

**The State of Texas, Appellee**

---
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-10-300963, HONORABLE KAREN SAGE, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Bruno Trevino of the offense of indecency with a child by contact. *See* Tex. Penal Code § 21.11(a)(1). Punishment was assessed at 12.5 years' imprisonment. In two points of error on appeal, Trevino asserts that the district court abused its discretion during the punishment phase of trial by excluding certain evidence and by failing to instruct the jury to disregard an argument made by the State during closing. We will affirm the judgment of conviction.

## BACKGROUND

The jury heard evidence that on or about March 21, 2010, Trevino touched the sexual organ of Z.Q., the eleven-year-old stepdaughter of Trevino's brother, while she was sleeping. The evidence included the testimony of the victim, the officer who investigated the incident, and relatives of the victim, each of whom testified to various aspects of the nature and surrounding circumstances of the offense. The jury found Trevino guilty of the charged offense of indecency with a child

by contact, and the case proceeded to punishment. The evidence considered by the jury during punishment, which we discuss in more detail below as it relates to Trevino's points of error, included the testimony of D.T. and M.T., Trevino's biological nieces, each of whom provided testimony relating to separate incidents in which Trevino had allegedly touched them in a sexual manner while they were sleeping. At the conclusion of the punishment hearing, the jury assessed punishment as noted above, and the district court sentenced Trevino in accordance with the jury's verdict. This appeal followed.

## ANALYSIS

### Exclusion of evidence

In his first point of error, Trevino asserts that, during the punishment phase of trial, the district court abused its discretion in excluding evidence related to D.T.'s testimony. According to Trevino, D.T. had made a statement to her grandmother prior to testifying that was inconsistent with D.T.'s trial testimony, and Trevino wanted to impeach D.T.'s credibility with this statement. However, the district court did not allow the evidence to be admitted.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex. Crim. App. 2008). The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). A trial court abuses its discretion only when its decision "is so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005).

2

Rule 613(a) permits a party to impeach a witness with a prior inconsistent statement. Tex. R. Evid. 613(a). However, "[i]n order to qualify for admission under Rule 613(a), the court must be persuaded that the statements are indeed inconsistent." *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002); *Baldree v. State*, 248 S.W.3d 224, 233 (Tex. Crim. App. 2007); *see also United States v. Hale*, 422 U.S. 171, 176 (1975).

In this case, Trevino elicited the following testimony from D.T. regarding the alleged incident with Trevino:

Q.    Did you—have you told anybody that this wasn't true?

A.    No, I didn't.

Q.    Isn't it true that you told your grandmother, Mary Trevino, that it wasn't true?

A.    No, I didn't.

Q.    And that you had made a big mistake?

A.    She did. She—

Q.    What?

A.    Did she make a big mistake?

Q.    That you had made a big mistake—

A.    No, I didn't.

Q.    —that it didn't—didn't occur. Did you tell anybody else that?

A.    I didn't tell anybody it didn't happen because I knew it was true. She [D.T.'s grandmother] put words in everybody else's mouth.

3

Subsequently, Trevino sought to introduce what he claimed was a prior inconsistent statement that D.T. had made to her grandmother. In a hearing outside the presence of the jury, the district court questioned the grandmother regarding what D.T. had allegedly told her:

> Q. Okay. So you are the—[D.T.], the witness's, grandmother—
>
> A. Yes, ma'am.
>
> Q. —is that correct? And I've been told that the Defense wishes to offer evidence to rebut the witness's statement that she never said this never happened, and so you would—if you were called to the witness stand, you would testify to what, that she said at your house she told you what?
>
> A. That she made a mistake.
>
> Q. What were her words exactly?
>
> A. She said, Grandma, I made a mistake. And I ask, about what, Mija? Because this was like six months later. You know, it's not—it wasn't right after it had happened. This was like six months later. And then—then she told me and I said, well, you need to—
>
> Q. She told you what?
>
> A. She told me, Grandma, I made a mistake.
>
> Q. Yes. And you said, about what?
>
> A. Yes, and she said—
>
> Q. And she said?
>
> A. —about what I had said about Bruno. And I told her, well, you need to tell your mom and your dad.

The district court then excused the witness and had the following discussion with the parties:

4

[Prosecutor]: . . . . That's not a recantation. That—we don't know what the mistake was.

[The Court]: I made a—

[Prosecutor]: I made a mistake, maybe I didn't want to get my uncle in trouble, maybe whatever, I feel bad about what I said, not it wasn't true.

[The Court]: I think that's absolutely right. I mean, what—she was asked and answered if she told her grandma it wasn't true. The issue is whether or not it was true.

[Prosecutor]: Correct.

[The Court]: Grandma is not saying that.

[Prosecutor]: Right.

[The Court]: She's saying she made a mistake and there are numerous reasons where the—that telling may have been a mistake. I told and nothing happened, I told and the family is in disarray, I told and, you know . . . . So the statement as the witness would testify does not rebut the statement—is not a recantation, does not say that she told me that it never happened, which I believe is what she was asked and answered on direct examination. So I will not allow that testimony.

[Defense counsel]: And, Your Honor, if we may, still—I guess we would argue that given the context of that conversation, that a reasonable person can deduce that that was actually—that statement, I made a mistake, actually means that she made a mistake as to what she believes happened or the prior statement in general or the prior statement, period, that she made a mistake and it's not true and a reasonable person can deduce that.

[Prosecutor]: It's a hearsay statement, Judge, and a hearsay statement—in order to impeach somebody with a hearsay statement, which is the extrinsic evidence they're offering, has to be specific. First of all, the denial has to be offered. Second, it has to be specific as to why this statement—this hearsay statement by

5

|                | this grandmother is, in fact, rebutting what the child said, and it's not. It's just a general, I made a mistake and it could— |
|----------------|------------------------------------------------------------------------------------------------------------------|
| [The Court]:   | I think you could believe both witnesses 100 percent. I think you could believe that both witnesses are testifying absolutely truthfully and I don't believe the statements are inconsistent. |

On this record, we cannot conclude that the district court abused its discretion in finding that D.T.'s statement to her grandmother was not inconsistent with D.T.'s trial testimony. The questions that D.T. was asked on cross-examination, the district court could have reasonably found, concerned whether she had ever recanted the accusation that she had made against her uncle. In contrast, as the district court observed, the statement that she had made to her grandmother could have concerned any number of things—that D.T. regretted what she had said, that her accusation had negative consequences for her family, that she did not want to testify in court against her uncle, etc. Therefore, the district court's conclusion that the jury "could believe both witnesses 100 percent" was within the zone of reasonable disagreement. It was not unreasonable for the district court to conclude that making a "mistake" could have meant one thing to D.T. when defense counsel used that word while cross-examining her, but it could have meant an entirely different thing to D.T. when she was speaking with her grandmother. Because the statement was not necessarily inconsistent with D.T.'s trial testimony, we cannot conclude that the district court abused its discretion in excluding the evidence. *See Lopez*, 86 S.W.3d at 230-31; *see also Gonzalez v. State*, No. 12-11-00205-CR, 2012 Tex. App. LEXIS 8246, at *24-25 (Tex. App.—Tyler Sept. 28, 2012, pet. ref'd) (mem. op., not designated for publication) (considering context of prior statement in determining whether it was inconsistent with trial testimony).

6

Moreover, even if the district court had abused its discretion in excluding the evidence, we could not conclude on this record that Trevino was harmed by the error. As a general rule, the exclusion of evidence offered by the defense is non-constitutional error. *See Walters v. State*, 247 S.W.3d 204, 221 (Tex. Crim. App. 2007); *Potier v. State*, 68 S.W.3d 657, 663-65 (Tex. Crim. App. 2001). Non-constitutional error that does not affect a defendant's substantial rights must be disregarded. Tex. R. App. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Here, the extent of the proferred testimony from the grandmother would have been that D.T. had told her that she had made a "mistake." As we have already explained, that could mean any number of things other than a recantation, and we could not conclude that the exclusion of such limited testimony, even if improper, would have had a substantial and injurious effect or influence in determining the jury's verdict. Additionally, D.T. was not the only child who testified during punishment that she was touched inappropriately by Trevino. The jury also heard testimony from M.T., who was seven or eight years old at the time Trevino allegedly touched her, and the grandmother's proferred testimony did not have a tendency to affect the jury's determination of that victim's credibility. Considering all of the evidence in the record, we cannot conclude that the absence of the excluded evidence had a substantial and injurious effect or influence in determining the jury's verdict on punishment. We overrule Trevino's first point of error.

**Improper jury argument**

In his second point of error, Trevino asserts that the district court abused its discretion in failing to instruct the jury to disregard an allegedly improper comment made by the prosecutor

7

during the State's closing argument at the punishment hearing. Specifically, Trevino claims that the prosecutor "struck at the defendant over the shoulders of defense counsel" with the following argument:

> Ladies and gentlemen, the State believed that we were missing an element, that element of sexual gratification with the intent to gratify his sexual desire, we believed that we would not be able to prove that in front of a jury. The State did not rush to judgment. If only, if only we knew then what we know now. So for the Defense to stand up and say that we are on this full speed ahead on this train moving to convict, not so. Defendant got away with it and he knew it. So for the Defense to stand up and then say that there's a low probability that he'll do it again, huh-uh.

Immediately thereafter, the following occurred:

| [Defense counsel]: | Your Honor, I object to this. She's striking at the defendant over counsel's shoulders. |
|---|---|
| [The Court]: | Sustained. |
| [Defense counsel]: | I ask the jury be instructed to disregard it. |
| [The Court]: | Your objection is sustained, [defense counsel]. |
| [Defense counsel]: | Ask for a mistrial. |
| [The Court]: | Denied. |

The prosecutor then continued with her argument.

It is well established that it is improper for the State to "strike at a defendant over the shoulders of counsel" during argument. *See, e.g.*, *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010); *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007); *Wilson v. State*, 7 S.W.3d 136, 147 (Tex. Crim. App. 1999); *Mosley v. State*, 983 S.W.2d 249, 258 (Tex. Crim. App. 1998);

8

*Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995); *Orona v. State*, 791 S.W.2d 125, 128 (Tex. Crim. App. 1990). "Although it is impossible to articulate a precise rule regarding these kinds of argument, it is fair to say that a prosecutor runs a risk of improperly striking at a defendant over the shoulder of counsel when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character." *Mosley*, 983 S.W.2d at 259.

Assuming without deciding that the above argument was improper (as the district court presumably found it to be when it sustained the objection), and further assuming that the district court should have instructed the jury to disregard it upon request,[1] we cannot conclude on this record that any error in allowing the jury to consider the argument harmed Trevino. "Although a special concern, improper comments on defense counsel's honesty have never been held to amount to a constitutional violation." *Id*. Instead, they constitute "other errors" that must be disregarded unless they affect a defendant's substantial rights. *Id*. (citing Tex. R. App. P. 44.2(b)). In determining whether the defendant was harmed by improper jury argument, courts are to balance the following three factors: (1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Id*. In cases in which the improper argument was made during the punishment phase of trial, we are to analyze the third factor with regard to the certainty of the punishment assessed, i.e., the likelihood of the same punishment being

---

[1] Error may occur when a trial court sustains an objection but fails to give a requested instruction to disregard. *See Moreno v. State*, 821 S.W.2d 344, 354 (Tex. App.—Waco 1991, pet. ref'd).

assessed absent the misconduct. *See Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007); *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000).

Regarding the first factor, we do not find the prosecutor's misconduct to be severe. Severely improper comments are those which inject new facts into the case, or directly accuse defense counsel of lying or manufacturing evidence. *See, e.g.*, *Orona*, 791 S.W.2d at 127-28; *Gomez v. State*, 704 S.W.2d 770, 771 (Tex. Crim. App. 1985); *Fuentes v. State*, 664 S.W.2d 333 (Tex. Crim. App. 1984); *Lopez v. State*, 500 S.W.2d 844, 846 (Tex. Crim. App. 1973); *Bray v. State*, 478 S.W.2d 89, 90 (Tex. Crim. App. 1972). The comments in this case do not rise to such a level. Instead, they appear to be, at most, a "mildly inappropriate" response to defense counsel's characterization of the evidence presented. *See, e.g.*, *Mosley*, 983 S.W.2d at 260; *Gorman v. State*, 480 S.W.2d 188, 190 (Tex. Crim. App. 1972). This factor weighs in the State's favor.

Regarding the second factor, no curative instruction was given, nor was the prosecutor admonished for her argument. This factor weighs in Trevino's favor. *See Mosley*, 983 S.W.2d at 260.

Regarding the third factor, we observe that the evidence in this case included testimony from the stepdaughter of Trevino's brother and two of Trevino's biological nieces, each of whom testified that Trevino had touched them in a sexual manner. Considering the strength of this evidence—which tended to show that Trevino had committed other offenses similar to the one for which he had been found guilty, and which further tended to show that Trevino had committed those offenses against children who were his relatives, while the children slept—we find it likely that the same punishment would have been assessed even if the jury had been instructed to disregard the

10

prosecutor's argument. *See Hawkins*, 135 S.W.3d at 85 (concluding that evidence of extraneous offenses and aggravating circumstance of charged offense were "a much more likely reason" for punishment assessed than improper argument). This factor weighs in the State's favor.

Balancing the three factors for assessing harm in this case, we find that they weigh in the State's favor. Although there was no curative instruction given, the alleged misconduct was not severe, and, based on the strength of the State's case, we have fair assurance that the misconduct did not have a substantial or injurious effect or influence in determining the jury's verdict on punishment. Accordingly, we cannot conclude that Trevino was harmed by the alleged error. *See* Tex. R. App. P. 44.2(b); *Mosley*, 983 S.W.2d at 260. We overrule Trevino's second point of error.

**CONCLUSION**

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: August 9, 2013

Do Not Publish

11