**Richard Vasquez ORONA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1228–87.**

Court of Criminal Appeals of Texas, En Banc.

May 16, 1990.

Rehearing Denied June 27, 1990.

Michael Logan Ware, Fort Worth (court appointed on appeal), for appellant.

Tim Curry, Dist. Atty., C. Chris Marshall, David L. Richards, Robert K. Gill and Gary Medlin, Asst. Dist. Attys., Fort Worth, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

W.C. DAVIS, Judge.

Appellant was convicted by a jury of murder. See V.T.C.A., Penal Code, § 19.02. The same jury assessed punishment at ninety-nine years confinement in the Texas Department of Corrections.[1]

On direct appeal the Fort Worth Court of Appeals affirmed appellant's conviction. *Orona v. State*, 737 S.W.2d 432 (Tex.App. —Fort Worth [2d Dist.] 1987), *aff'd per addendum* 739 S.W.2d 132 (Tex.App.— Fort Worth [2d Dist.] 1987). We granted appellant's petition for discretionary review to examine (1) whether the Court of Ap-

---

1. Now the Texas Department of Criminal Jus-   tice, Institutional Division.

peals applied the correct standard of reviewing harm where the State attempts to strike appellant over the shoulders of defense counsel; and (2) whether the Court of Appeals, without the benefit of this Court's opinion in *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1988), improperly overruled appellant's point of error concerning a parole instruction that was given in accord with Article 37.07, § 4(a), V.A.C.C.P. We affirm the Court of Appeals' disposition of the improper jury argument issue. However, we remand the cause to the Court of Appeals for further proceedings in light of *Rose*, supra, and *Arnold v. State*, 784 S.W.2d 372 (Tex.Crim.App.1990).

On September 19, 1984, Guadalupe Orona was murdered as she exited her home on her way to work in the early morning hours. The record reflects appellant and Guadalupe Orona were married approximately ten years, but at the time of her murder were separated and in the process of obtaining a divorce. Four months prior to the shooting, Guadalupe and her two children moved in with Elvira and Oscar Galvan, her sister and brother-in-law, their three children, and her sister Anita Tijerina.

During its case-in-chief, the State called several family members who were present inside the house when Guadalupe was murdered. Oscar Galvan was awake and watching television when Guadalupe left the house at 3:00 a.m. as she did each morning on her way to work with the U.S. Postal Service. She exited through the back door which led to a driveway that ran along the side of the house. Moments after the back door shut, Oscar heard Guadalupe yell, "[No], Richard, no." Oscar's wife, Elvira, corroborated her husband's testimony when she told the jury she was awakened by the victim's outcry, followed by two shots. Almost immediately after the last word was uttered, two gunshots were fired. Hearing the gunfire, Oscar ran from the living room to his bedroom to get his rifle in order to protect his family. He returned to the living room and told his wife to keep the children in their room, so he could look through the windows that faced the driveway. He was unable to see anyone outside.

The deceased's daughter, Jennifer Orona, was asleep with several of her cousins, when she was awakened by the screaming of her aunt, Elvira Galvan. While still in her bed, Jennifer peered through a crack in the curtains covering a window that faced the driveway. Two separate times she recognized appellant outside her window but could not see what he was doing. Jennifer also testified that earlier in the month she had witnessed appellant physically beat her mother, which resulted in the hospitalization of Guadalupe.

Another of the deceased's sisters, Anita Tijerina, testified appellant had threatened to "beat the hell" out of the deceased because she had filed for divorce and requested child support. However, appellant and Guadalupe thereafter agreed on an amount for child support.

Antonia Najar, the deceased's mother, was next called to the stand. She testified that months before the shooting, appellant called her home asking for Guadalupe. During the conversation, appellant explained he had received the divorce papers and he needed to talk with Guadalupe to insure he would get his fair share of the property. In addition, he told Antonia that if Guadalupe did not call him, "a lot of peoples (sic) are going to get hurt."

The State also called the Tarrant County Chief Medical Examiner and a Fort Worth police officer to the stand. Dr. Peerwani, the medical examiner, testified Guadalupe died as a result of two gunshot wounds fired at close range into her face. The final witness called by the State was Detective J.V. Cartar who testified appellant, escorted by his attorney, turned himself in after an arrest warrant for murder had been issued. The instant prosecution followed.

In his first ground for review appellant's complaint is based on the following jury argument made by the State during the close of the guilt-innocence phase of trial:

> PROSECUTOR: I am going to sit down here in a minute and after me the Defense is going to argue. I would caution

you, ladies and gentlemen, that they are both very experienced Defense lawyers. They know how to argue to get people off the charges they are charged with. DEFENSE: Excuse me, Your Honor. We are now going to object. That is an improper jury argument and it's an attack of the accused over the shoulders of the Defense Counsel. It's clearly improper.

THE COURT: It's overruled.

On direct appeal the State admitted the above-quoted argument was improper and constituted error. The Fort Worth Court of Appeals agreed and further confirmed the trial court should have sustained appellant's timely objection and instructed the jury to disregard. However, the appeals court determined there was not a reasonable possibility the improper jury argument might have contributed to appellant's conviction or punishment. Tex.R.App.P. 81(b)(2).

We have examined the record before us and agree the prosecutor's comments were improper. The specific question before us, then, is whether the Court of Appeals, by analyzing the harmlessness of the error in terms of Rule 81(b)(2), utilized the proper standard of review.

■ The appellant contends this Court, in *Gomez v. State*, 704 S.W.2d 770 (Tex. Crim.App.1985), established a "two prong" test to determine when improper jury argument is harmful and requires reversal. In support of his proposition, appellant relies exclusively on the following language:

> The type of argument in the instant case has only been found to be harmless when the argument 'was a throw-away phrase' with 'no logical tie in with the facts or earlier arguments,' and *the defendant failed to object.*

*Gomez*, 704 S.W.2d at 773, citing *Borgen v. State*, 672 S.W.2d 456 (Tex.Crim.App.1984) (emphasis in original).

Appellant contends the State must show, in order to avoid reversal, (1) the comment during argument was a "throw-away phrase" with no logical tie to the facts or in response to an earlier argument and, (2) the appellant failed to lodge a timely objec-

tion to the improper argument. We disagree with appellant's contention that *Gomez*, supra, created a "two-prong" test which supercedes or replaces Rule 81(b)(2). In point of fact, *Gomez*, supra, was decided before Rule 81(b)(2) was enacted. Moreover, in that case, Judge Campbell was merely reviewing the history of this Court's disposition of cases concerned with improper jury argument where the prosecutor was attempting to strike the defendant over the shoulders of counsel. This Court did not fashion a new test in *Gomez*, supra. Subsequent to the enactment of Rule 81(b)(2) where it has first been decided that error was committed, the proper standard of review, and the one applied in the instant case by the court below, is whether, in light of the record as a whole, there is a reasonable possibility the argument complained of might have contributed to appellant's conviction or punishment. *Garrett v. State*, 632 S.W.2d 350 (Tex. Crim.App.1982); Tex.R.App.P. 81(b)(2).

This Court maintains a special concern for final arguments that result in uninvited and unsubstantiated accusation of improper conduct directed at a defendant's attorney. *Gomez v. State*, supra; *Fuentes v. State*, 664 S.W.2d 333 (Tex.Crim.App.1984); *Boyde v. State*, 513 S.W.2d 588 (Tex.Crim. App.1974); *Wrenn v. State*, 478 S.W.2d 98 (Tex.Crim.App.1972). To protect defendants from unwarranted attacks, this Court has held such argument to be reversible error even if a trial court sustains an objection and instructs the jury to disregard. *Gomez*, supra; *Bell v. State*, 614 S.W.2d 122 (Tex.Crim.App.1981); *Jones v. State*, 151 Tex.Crim. 115, 205 S.W.2d 590 (App.1947). In these cases, the improper argument made direct reference to the defense attorney and was combined with statements that infer defense counsel might manufacture evidence and offer witnesses who give false information.

In *Jones*, supra, the State argued:

> I have heard of Dusty Miller [the defense attorney] for many years. When I first came to this country I heard of men that Dusty Miller had cleared of murder by the machinations of a great mind and a

shrewd mind. My dear fellow, you needn't have worried one minute because Dusty Miller will take care of everything and furnish the evidence.

We reversed the conviction, despite a sustained objection and instruction to disregard. Judge Beauchamp stated:

> The argument evidently had the purpose of pointing out the man who had sufficient mentality to manufacture the evidence that would bring into the case a legal defense.

*Jones*, 205 S.W.2d at 592.

The argument in the instant case, just like the comment in *Jones*, supra, was uninvited and not supported by any evidence in the record. We do not reach the question whether the improper argument was cured because the trial court overruled the objection and for that obvious reason, no instruction to disregard was given.

In *Bell*, supra, the State argued, "His [the defense attorney's] duty is to see that his client gets off even if it means putting on witnesses who are lying." We held:

> The effect of this argument was to instruct the jury that only prosecuting attorneys seek to uphold truth and justice whereas defense counsel have a license to use any means to mislead the jury. By his argument the prosecutor was striking at the appellant over the shoulders of his defense counsel in an attempt to prejudice the jury against the appellant. The argument was improper and the trial court's instruction to disregard was not sufficient to have removed the prejudice it created.

*Bell*, 614 S.W.2d at 123.

In the instant case, the appellant lodged a timely objection which the trial court overruled, permitting the jury to believe the argument was proper, and by implication declined to give an instruction to disregard, just as what happened in *Bell*, supra.

In *Gomez*, supra, the State argued:

> We are not paid to satisfy Pat Abeyta, [the defense attorney] or anyone else that he drags down here from Lubbock to manufacture evidence ... It was designed to make you lose sight of the fact that Mr. Abeyta is paid to get this defendant off the hook.

*Gomez*, 704 S.W.2d at 771.

We found the State's argument implied the appellant's attorney would do anything to get his client "off the hook" because that was what he was paid to do. This comment, hard on the heels of the State's accusation of manufactured evidence, contained the clear indication that defense counsel was not above offering perjured testimony, if necessary, to accomplish his paid objective. In reversing the case, we concluded the State's arguments invited the jury to discredit appellant's defense, based on counsel's reputation, and thus denied the appellant a fair and impartial trial. *Gomez*, supra.

Here, the trial court overruled appellant's objection just as the trial court did in *Gomez*, supra. The Court of Appeals held the improper argument constituted error but found the error harmless in light of the record as a whole, citing *Saylor v. State*, 660 S.W.2d 822 (Tex.Crim.App.1983), in its original opinion and *Borgen*, supra, in its "Addendum to Opinion" filed subsequent to this Court granting appellant's petition.

In *Saylor*, supra, we were not concerned with an attack by the prosecutor directed at the defendant over the shoulders of his attorney; rather, we were faced with an improper comment on the defendant's failure to testify. Therefore, *Saylor*, supra, is inapposite to the instant case.

In *Borgen*, supra, the State concluded its final argument with the phrase, "as long as lawyers are for hire justice is for sale." The State made no specific reference to defense counsel, or any derogatory accusations about trustworthiness of the defendant's attorney's character. Coupled with the defendant's failure to object or request an instruction for the jury to disregard, we held the argument, while improper, was not harmful as to require reversal.

■ Since Rule 81(b)(2) was not in effect at the time any of the above cited cases were decided, the question of harm was not analyzed in terms of that particular standard of review. This Court has

since decided that Rule 81(b)(2) analysis does apply to jury argument error. *Griffin v. State,* 779 S.W.2d 431 (Tex.Crim.App. 1989); *Haynie v. State,* 751 S.W.2d 878 (Tex.Crim.App.1988). To determine whether the error is harmless, we must calculate as much as possible the probable impact of the error on the jury in light of the existence of the other evidence. *Belyeu v. State,* 791 S.W.2d 66; *Harris v. State,* 790 S.W.2d 568. In the context of a harmless error analysis, it is important to note that "other evidence" is the entire record. *Harris,* supra. The task before us is not to determine the harmfulness of the error simply by examining whether there exists overwhelming evidence to support appellant's guilt. Rather, we must examine the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications. *Harris,* supra. Further, we must consider how much weight a juror would probably place upon the error. *Harris,* supra. In addition, we must determine whether declaring the error harmless would encourage the State to repeat it with impunity. *Belyeu* and *Harris,* both supra. We focus our attention on whether the error at issue might possibly have prejudiced the jurors' decision-making, and whether the jurors were able to properly apply the law to the facts in order to reach a verdict. *Harris,* supra. It is the effect of the error and not the existence of overwhelming evidence or the lack thereof that dictates our judgment.

■ Applying these standards to the instant case and recognizing overwhelming evidence of guilt is a variable to be calculated, we conclude beyond a reasonable doubt the improper jury argument by the State did not contribute to the appellant's conviction or punishment.

In reviewing the record it is apparent the State was not intentionally attempting to taint the trial process with the improper argument. The State made only a passing reference to defense counsel's level of experience and ability as an advocate. Further, when defense counsel objected to the State's argument and the trial court overruled the objection, the State completely abandoned its argument. If the State had sought to advance its argument after the objection, then an opposite result might be necessary. Since the comment was made in passing and not reinforced or emphasized, the probable impact of the error on the jury was minimal, if any. Appellant's first ground for review is overruled.

■ In his second ground for review, appellant contends the Court of Appeals improperly overruled his point of error concerning a parole instruction that was given in accord with Article 37.07, § 4(a), V.A.C.C.P. The Fort Worth Court of Appeals affirmed appellant's conviction, holding Article 37.07, § 4(a), supra, was constitutional and did not violate either the separation of powers doctrine or the due process clauses of the United States and Texas Constitutions. In reaching that determination, the Court of Appeals did not have the benefit of our opinion in *Rose,* supra, where we held § 4(a) was unconstitutional; nor our decision in *Arnold,* supra, where this Court set out several factors to be used in analyzing the possible harm suffered as a result of the erroneous charge on parole. We therefore remand the cause to the Court of Appeals to apply a harmless error analysis pursuant to *Rose* and *Arnold,* both supra.

CLINTON and TEAGUE, JJ., dissent.