Opinion
filed November 29, 2012

 

                                                                       In The

                                                                              

  Eleventh Court of
Appeals

                                                                   __________

 

                                                         No. 11-10-00329-CR

                                                    __________

 

                        RICHARD
GEORGE BAKER, JR., Appellant

 

                                                             V.

 

                                      STATE
OF TEXAS, Appellee



 

                                   On Appeal from
the 35th District Court

                                                           Brown
County, Texas

                                                   Trial
Court Cause No. CR20132

 



 

M E M O R A N D U M   O
P I N I O N

Appellant, Richard
George Baker, Jr., pleaded not guilty to the offense of burglary of a
habitation with the commission of a sexual assault, and he was tried jointly with
his codefendant, Johnathen Lee Harrison.  See Tex. Penal Code Ann. § 30.02 (West 2011).  The jury
found both men guilty.  After the trial court found an enhancement paragraph in
appellant’s indictment to be true, the trial court assessed punishment at confinement
for sixty years.  In his sole issue on appeal, appellant contends that the
trial court abused its discretion when it denied his motion for mistrial
because the prosecutor engaged in improper jury argument.  We affirm.  

            The complainant, Kira Taylor,
and her son went to Danessa Gomez’s apartment to spend the night after Taylor’s
boyfriend was arrested for unpaid tickets.  The women smoked methamphetamine
for hours—some of which Gomez gave to Taylor and some of which Taylor
purchased.  Taylor testified that, while she was at Gomez’s apartment, Harrison
called twice and asked if he and appellant could come over.  Taylor had met
Harrison a few days before at the home of her friend, Teresa, but did not know
appellant.  Harrison was also friends with Taylor’s boyfriend, who is the
father of Teresa’s children.  

Taylor testified that
she did not know how appellant and Harrison got directions to Gomez’s apartment
that day; she had not given them directions.  Gomez, however, testified that
she gave Taylor permission to invite them, and she heard Taylor give them
directions.  After they arrived at Gomez’s apartment, Harrison told Taylor that
he was looking for someone with whom appellant could have sex.  Taylor
testified that she told them she was not interested.  

Soon thereafter, Gomez
wanted them to leave before their loud voices awoke the children.  Although Gomez
testified that Taylor had asked her if she would watch Taylor’s son while Taylor
left with appellant and Harrison, Taylor denied it.  Taylor, her son, appellant,
and Harrison left Gomez’s apartment at the same time, which was around two in
the morning.  

            Taylor testified that, soon
after she arrived home and put her son in his bed, she heard a knock at the
door.  Taylor said she opened the door slightly and saw Harrison and appellant
on the front porch holding forty-ounce beers.  When Taylor told them that they
could not come in, she said that Harrison pushed open the door and entered
anyway.  She testified that appellant held her arms while Harrison played a CD
that he had brought with him.  When she tried to get away, she said that Harrison
pulled her by the hair from the dining room into the living room, took off her
shirt, pulled down his pants, and told her to perform oral sex on him.  At the
same time this was going on, appellant penetrated her vaginally from behind
with his penis.  After another attempt to get away, Taylor said that appellant
pushed her into a chair and continued to have sex with her until he
ejaculated.  But when Taylor tried to flee to the bathroom, Harrison again
grabbed her by the hair, told her that he was not finished, and penetrated her
vaginally with his penis; appellant sat on the couch and drank a beer.  Taylor
testified that once Harrison released her, but before he left, he said, “That’s
for Teresa.”  

            Taylor called the police, reported
the incident, and gave the police a description of the assailants’ vehicle as
well as their possible whereabouts.  Harrison and appellant had tried to hide
from the police at a friend’s apartment, but the friend would not let them
stay.  As appellant and Harrison left the apartment complex, police recognized their
vehicle, stopped it, and arrested them.  Appellant made a phone call while in
the backseat of the patrol car, and the phone call was recorded.  Appellant
told the person on the other end of the conversation that he was going to the
penitentiary for life.  The officer who made the arrest testified that, after
Taylor identified the men in an on-scene show-up and after he gave Miranda[1] warnings,
Harrison made the following statement while in the patrol car:

I don’t care, Bro.  I want to
tell you what happened.  Hell, yeah, we f----d that girl, but that s--t was
consensual. . . .  Check this out.  I was trying to set my homeboy up with some
p---y.  I was also going to use that b---h to show my other homeboy she was cheating
on him.  That b---h thought she was going to give up p---y for some dope. 
After we f----d her, I told her I was going to tell her old man that she was
cheating on him.  She told me if we did that, she was going to call on us. 

Shortly after appellant was booked into
jail, a jailer saw him washing his penis with water at a sink in his cell.  

            An emergency room doctor
examined Taylor.  He noted two abrasions around the entry to her vagina in a
location that would usually indicate “missionary style” sex.  The doctor
explained that “[t]ypically abrasions that you see in that area are usually due
to forced vaginal penetration or a woman that’s unreceptive to sexual contact”
and that he would not expect to see that type of abrasion after consensual
sex.  On cross-examination, however, the doctor agreed that such abrasions do
not always indicate sexual assault.  He stated that this sort of abrasion could
“sometimes be from trauma,” such as an accident while riding a bicycle.  Although
the doctor said that such abrasions can occur when a woman is unreceptive to
sexual activity, he testified that “unreceptive” can mean physically,
emotionally, or mentally, including situations in which a woman wants to engage
in sexual intercourse but is not sexually aroused, is menopausal, or has
vaginal dryness.  The doctor found no evidence of forced oral sex, and Taylor
never told the doctor that she had been violated orally.  The evidence did not
show that her clothes were torn or that she had bruises or other visible signs
of assault.  

            After both sides had rested
and closed, the State waived its opening jury argument.  Harrison’s attorney
argued first.  He informed the jury that, after he sat down, he could not get
up and say anything regardless of what the prosecutor “stands up and says,
whether I believe that it is fair or unfair, . . . whether I believe that it’s
truthful -- or hang the truthfulness -- whether I believe he has misremembered
what you heard from here.”  Harrison’s attorney explained that, when expert
witnesses give testimony elicited by the prosecutor, defense attorneys “flesh
it out” during cross-examination: 

He sat down, he
made a blanket assertion the abrasions indicated rape.  Then we talked about the
head, the heart, and the genitalia are sometimes not in sync.  

Sometimes the
head and the heart are willing -- or just the head is willing, but the
genitalia are a little behind, and that’s why KY is a wealthy company.  

We also talked
about how face-to-face, man on top, woman on the bottom, vigorous sex can lead
to the same abrasions.

The prosecutor objected that this was a
misstatement of the doctor’s testimony, and the trial court instructed the jury
that “the lawyers will comment on the evidence that they heard and call it to
the best of their ability.  You’re instructed to remember the testimony of all of
the witnesses as you heard it from right there, the witness stand.”  Harrison’s
attorney continued his argument and told the jury that the abrasions were not
necessarily an indication of sexual assault because they could also indicate
consensual sex with inadequate lubrication.  Appellant’s attorney subsequently
argued, “And so, maybe those abrasions are from consensual sex . . . the
prosecutor may say those are rabbit holes that you go down and those are red
herrings and he’s trying to mislead you.  No, I’m not.  I’m trying to lead you
where you need to go.”

The State made its
final jury argument after defense counsel completed their arguments, and during
that final argument by the State, the following transpired:

What about this
medical evidence?  This is what surprises me.  It really does.  Because I’ve
done a lot of trials. . . .  And [both defense counsel] start talking
about this medical evidence -- and I don’t know how else to say it, but just
spin it -- that’s what lawyers do -- spin it in their direction.  I don’t
know.  I think flat out lie about it.

Appellant’s counsel objected to the
prosecutor’s “characterization of this lawyer lying.”  The attorneys approached
the bench, where each defense counsel continued voicing his objection to being
called a liar in front of the jury.  Defense counsel also requested a mistrial. 
During the discussion at the bench, appellant’s attorney stated, “Spinning
things in the direction is a lawyer’s responsibility.”  Appellant’s attorney
also stated that saying “spinning” is different from “saying it’s a lie.”

The trial court
sustained appellant’s and Harrison’s objection but denied their motion for
mistrial.  The trial court also instructed the jury to disregard the
prosecutor’s last comment.  The prosecutor continued his closing argument,
first commenting without objection from defense counsel that it is widely known
that “lawyers spin things” and then addressing the doctor’s testimony as he recalled
it and the reasonable deductions therefrom.  The prosecutor did not thereafter
accuse defense counsel of lying.

            Appellant complains that the
trial court abused its discretion when it denied appellant’s motion for
mistrial.  Specifically, appellant contends that a limiting instruction was
insufficient to remove the prejudice caused by the prosecutor’s allegation that
the defense attorneys “flat out lie[d]” about the evidence.  The State asserts that
the argument “was simply a reasonable deduction from the evidence as the
Prosecutor saw it from his opinion” and that the limiting instruction was
sufficient because the prosecutor did not refer to appellant, bolster witness
testimony, or repeat the comment.  

When a trial court
sustains an objection, instructs the jury to disregard, but denies a motion for
mistrial, as here, we assume without deciding that the argument was improper
and look only to whether the court abused its discretion when it denied the
motion for mistrial.  Hawkins v. State, 135 S.W.3d 72, 76–77 (Tex. Crim.
App. 2004).  “A mistrial is the trial court’s remedy for improper conduct that
is ‘so prejudicial that expenditure of further time and expense would be
wasteful and futile.’”  Id. (quoting Ladd v. State, 3 S.W.3d 547,
567 (Tex. Crim. App. 1999)).  While a prosecutor’s “uninvited and
unsubstantiated accusation of improper conduct directed at a defendant’s
attorney” unquestionably puts the case at risk, only the most egregious
argument taints the jury to the extent that it warrants a mistrial.  Mosley
v. State, 983 S.W.2d 249, 258, 260 (Tex. Crim. App. 1998).

To determine whether
this nonconstitutional error was reversible or harmless, we apply Rule 44.2(b)
of the Texas Rules of Appellate Procedure.  Id. at 259.  In applying
that rule to an improper jury argument, we consider “(1) [the] severity of the
misconduct (the magnitude of the prejudicial effect of the prosecutor’s
remarks), (2) [the] measures adopted to cure the misconduct (the efficacy of
any cautionary instruction by the judge), and (3) the certainty of conviction
absent the misconduct (the strength of the evidence supporting the conviction).” 
Id.  To the extent possible, our review must calculate the probable
impact of the error on the jury in light of the record.  Orona v. State,
791 S.W.2d 125, 130 (Tex. Crim. App. 1990).  Whether there was overwhelming
evidence, or a lack thereof, does not dictate our analysis; instead, we focus
on the error’s effect on the trial.  Id.  We examine “the source of the
error, the nature of the error, whether or to what extent it was emphasized by
the State, and its probable collateral implications.”  Id.  We also
consider “whether declaring the error harmless would encourage the State to
repeat it with impunity.”  Id.

With respect to the
first factor, “[p]rejudice is clearly the touchstone of the first factor in the
Mosley test.”  Hawkins, 135 S.W.3d at 77.  In assessing severity
of a prosecutor’s arguments, we do not consider them in isolation from the
question of whether the argument had a prejudicial effect.  Id. at 78.  Prosecutors’
arguments that “attack the personal morals or trustworthiness of defense
counsel are manifestly improper because they undermine the adversarial system
by unfairly prejudicing the jury against the defendant’s attorney.”  Fuentes
v. State, 991 S.W.2d 267, 274 (Tex. Crim. App. 1999).  But when the jury is
“in a position to evaluate the truthfulness of the prosecutor’s assertion,” the
prejudice from improper argument may be minimized.  Mosley, 983 S.W.2d at
260.  In fact, when the jury is in such a position, the prosecutor’s comments
could “backfire if the jury disagrees with the prosecutor’s assessment of
defense counsels’ actions.”  Id.

In the present case, we
cannot hold that the prejudice stemming from the prosecutor’s improper comment
in this case warranted a mistrial.  Harrison’s counsel had already alluded to
the prosecutor’s “truthfulness.”  The prosecutor did not accuse the defendants
of lying, did not accuse defense counsel of manufacturing evidence, did not
argue outside the record, did not inject new facts into the record, and did not
repeat the complained-of comment.  As in Mosley, the jury in this case
was in a position to evaluate the accuracy of the prosecutor’s argument.  The
jurors had the doctor’s testimony before them and were able to discern it for
themselves.  Also as in Mosley, we cannot find that the first factor
weighs heavily in appellant’s favor.  See id. at 260.  

As for the second
factor, an instruction to disregard is generally sufficient to cure the
prejudice from an improper argument.  Dinkins v. State, 894 S.W.2d 330,
357 (Tex. Crim. App. 1995) (where the prosecutor argued that defense counsel
“wants to mislead you a little bit”); McGee v. State, 774 S.W.2d 229,
238 (Tex. Crim. App. 1989).  We presume that the jury followed the trial
court’s instruction to disregard.  

We cannot hold under
the record in this case that the third factor, the certainty of appellant’s
conviction absent the prosecutor’s improper argument, weighs heavily in favor
of either side.  Although we agree with appellant that the evidence in this
case was not overwhelming and that the medical evidence may have been—as the
State put it—“the critical evidence in the case,” we do not agree with
appellant that the prosecutor’s comment, which improperly cast aspersion on the
veracity of defense counsel with respect to the contents of the doctor’s
testimony, affected the outcome of this case.  Appellant asserts “that if
defense counsel would not have been called liars as it relates to the medical
evidence, that there is a substantial likelihood the verdict would have been
not guilty.”  The jury heard the doctor’s testimony relating to the medical
evidence and, presumably, judged the weight and credibility of that evidence
for itself.  Furthermore, during its deliberations, the jury requested the
doctor’s medical report, and the exhibit containing that report was delivered
to the jury.  We hold that the error in this case was harmless under Rule
44.2(b) as applied through the Mosley factors for improper jury argument
and that the argument was not so egregious as to warrant a mistrial.  

Although we
have found no reversible error in connection with the State’s jury argument, we
are not to be taken to approve the argument in any way.  As other courts
have expressed, we fail to understand why prosecutors continue to make
arguments of this nature.  See, e.g., Wilson v. State,
938 S.W.2d 57 (Tex. Crim. App. 1996), abrogated on other grounds by Motilla v.
State, 78 S.W.3d 352, 356–57 & n.26 (Tex. Crim. App. 2002).  That
is especially so in the face of a plethora of cases in which the courts of this
State consistently have held that such arguments clearly are out of bounds.
 We are not unmindful of the pace and stress of trial.  However, one
would think that, even in the “heat of battle,” the risk of retrial would be
caution enough to yield to cooler passions.  The argument in this case is
held to result in harmless error; that will not always be the case.

For the
reasons we have stated in this opinion, appellant’s issue is
overruled.  

The judgment of the
trial court is affirmed.  

            

 

Jim R. Wright

                                                                                                Chief
Justice

November 29, 2012

Do not publish.  See Tex. R. App. P. 47.2(b).

Panel
consists of:  Wright, C.J., 

McCall,
J., and Gray, C.J., 10th Court of Appeals.[2]









[1]Miranda v.
Arizona,
384 U.S. 436 (1966).





[2]Tom Gray, Chief
Justice, Court of Appeals, 10th District of Texas at Waco, sitting by
assignment to the 11th Court of Appeals.