**Opinion filed August 15, 2013**



**In The**

# Eleventh Court of Appeals

_____

## No. 11-11-00241-CR

_____

## JOHNATHEN LEE HARRISON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR20133**

## M E M O R A N D U M   O P I N I O N

The jury convicted Johnathen Lee Harrison, Appellant, of the offense of burglary of a habitation with the commission of a sexual assault, a first-degree felony.  *See* TEX. PENAL CODE ANN. § 30.02 (West 2011).  The trial court assessed Appellant's punishment at confinement for sixty years.  We affirm.[1]

---

[1]We note that the Court of Criminal Appeals granted Appellant permission to file this out-of-time appeal.

## Issues

Appellant presents three issues on appeal. In the first issue, Appellant contends that the trial court should have granted a mistrial after the prosecutor accused Appellant's trial counsel of being a liar. In his second issue, Appellant argues that the evidence showing that he had a "white pride" tattoo was irrelevant and was substantially more prejudicial than probative. Appellant asserts in his third issue that permitting the prosecutor to direct the jury's attention to the alleged victim during the closing argument at the guilt/innocence phase of trial affected Appellant's substantial rights.

## Background Facts

Although Appellant does not challenge the sufficiency of the evidence, we will briefly summarize the evidence in this case. Appellant and his codefendant, Richard George Baker, Jr., were tried together.[2] The record from the joint trial shows that Appellant and Baker entered the home of K.L.T. without her consent and sexually assaulted her. K.L.T. said that she heard a knock at her door and opened the door slightly. She saw Appellant and Baker, whom she had met a few days earlier, on the front porch holding forty-ounce beers. When K.L.T. told them that they could not come in, Appellant pushed open the door and entered anyway. She testified that Baker held her arms while Appellant played a CD that he had brought with him. When she tried to get away, Appellant pulled her by the hair from the dining room into the living room, took off her shirt, pulled down his pants, and told her to perform oral sex on him. At the same time this was going on, Baker penetrated her vaginally from behind with his penis. K.L.T. said that, after she attempted again to get away, Baker pushed her into a chair and continued to have sex with her until he ejaculated. But when K.L.T. tried to flee to the

---

[2]Baker was also convicted of burglary of a habitation with the commission of a sexual assault and also received a sentence of sixty years. *See Baker v. State*, No. 11-10-00329-CR, 2012 WL 5988900 (Tex. App.— Eastland Nov. 29, 2012, no pet.) (mem. op., not designated for publication).

bathroom, Appellant again grabbed her by the hair, told her that he was not finished, and penetrated her vaginally with his penis; Baker sat on the couch and drank a beer. K.L.T. called the police after Appellant and Baker left.

Appellant and Baker were arrested. Appellant admitted that he and Baker had sex with K.L.T., but he claimed that it was consensual sex.

An emergency room doctor examined K.L.T. He noted two abrasions around the entry to her vagina. He explained, "Typically abrasions that you see in that area are usually due to forced vaginal penetration or a woman that's unreceptive to sexual contact." The doctor testified that he would not expect to see that type of abrasion after consensual sex.

*Accusation that Defense Counsel was a Liar*

In his first issue, Appellant argues that the prosecutor, in his closing argument, improperly accused Appellant's trial counsel of lying and that the trial court erred in denying Appellant's motion for mistrial based upon that accusation. We addressed this same issue at length in our opinion in Baker's appeal, and we concluded that the error was harmless under TEX. R. APP. P. 44.2(b) as applied through the *Mosley* factors for improper jury argument and that the argument was not so egregious as to warrant a mistrial. *Baker*, 2012 WL 5988900 (citing *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998)). For the same reasons announced in our opinion in *Baker*, we hold that the prosecutor's comment was not so egregious as to warrant a mistrial.

The complained-of argument reads as follows:

> What about this medical evidence? This is what surprises me. It really does. Because I've done a lot of trials. . . . And [both defense counsel] start talking about this medical evidence -- and I don't know how else to say it, but just spin it -- that's what lawyers do -- spin it in their direction. I don't know. I think flat out lie about it.

3

The defense attorneys objected to being called liars in front of the jury, and they requested a mistrial. The trial court sustained the objections, instructed the jury to disregard, and denied the motions for mistrial.

Prior to the complained-of argument made by the prosecutor, Appellant's and Baker's defense attorneys had made statements during their closing arguments suggesting that the prosecutor's argument may not be "truthful," that the prosecutor may have "misremembered" the evidence, and that the prosecutor would try to "mislead" the jurors. Appellant's attorney had also addressed the content of the doctor's expert testimony, and the prosecutor had objected to the argument as being a misstatement of the record. After the complained-of argument, the prosecutor addressed the content of the doctor's expert testimony, and the defense attorneys objected that the prosecutor was misstating the evidence. In response to these objections, the trial court instructed the jurors to recall the evidence as they heard it from the witness stand.

When a trial court sustains an objection, instructs the jury to disregard, but denies a motion for mistrial, we assume without deciding that the argument was improper and look only to whether the court abused its discretion when it denied the motion for mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004). "A mistrial is the trial court's remedy for improper conduct that is 'so prejudicial that expenditure of further time and expense would be wasteful and futile.'" *Id.* (quoting *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999)). While a prosecutor's "uninvited and unsubstantiated accusation of improper conduct directed at a defendant's attorney" unquestionably puts the case at risk, only the most egregious argument taints the jury to the extent that it warrants a mistrial. *Mosley*, 983 S.W.2d at 258, 260.

To determine whether the error constitutes reversible error, we apply Rule 44.2(b) of the Texas Rules of Appellate Procedure because, as determined by

4

the court in *Mosley*, "improper comments on defense counsel's honesty have never been held to amount to a constitutional violation." *Id.* at 259. Appellant suggests that the error in this case constitutes constitutional error; we must, however, follow the ruling of the Court of Criminal Appeals in *Mosley*. Pursuant to *Mosley*, we are to consider the following factors when applying Rule 44.2(b) to an improper jury argument: "(1) severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Id.* To the extent possible, our review must calculate the probable impact of the error on the jury in light of the record. *Orona v. State*, 791 S.W.2d 125, 130 (Tex. Crim. App. 1990). Whether there was overwhelming evidence, or a lack thereof, does not dictate our analysis; instead, we focus on the error's effect on the trial. *Id.* We examine "the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, and its probable collateral implications." *Id.* We also consider "whether declaring the error harmless would encourage the State to repeat it with impunity." *Id.*

With respect to the first factor in the *Mosley* test, "[p]rejudice is clearly the touchstone." *Hawkins*, 135 S.W.3d at 77. In assessing the severity of a prosecutor's arguments, we do not consider them in isolation from the question of whether the argument had a prejudicial effect. *Id.* at 78. Prosecutors' arguments that "attack the personal morals or trustworthiness of defense counsel are manifestly improper because they undermine the adversarial system by unfairly prejudicing the jury against the defendant's attorney." *Fuentes v. State*, 991 S.W.2d 267, 274 (Tex. Crim. App. 1999). But when the jury is "in a position to evaluate the truthfulness of the prosecutor's assertion," the prejudice from improper argument may be minimized. *Mosley*, 983 S.W.2d at 260. In fact, when

5

the jury is in such a position, the prosecutor's comments could "backfire if the jury disagrees with the prosecutor's assessment of defense counsels' actions." *Id.*

In the present case, we cannot hold that the prejudice stemming from the prosecutor's improper comment in this case warranted a mistrial. Appellant's counsel had already alluded to the prosecutor's "truthfulness." The prosecutor did not accuse the defendants of lying, did not accuse defense counsel of manufacturing evidence, did not argue outside the record, did not inject new facts into the record, and did not repeat the complained-of comment. As in *Mosley*, the jury in this case was in a position to evaluate the accuracy of the prosecutor's argument. The jurors had the doctor's testimony before them and were able to discern it for themselves. Also as in *Mosley*, we cannot find that the first factor weighs heavily in Appellant's favor. *See id.*

As for the second factor, an instruction to disregard is generally sufficient to cure the prejudice from an improper argument. *Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995) (where the prosecutor argued that defense counsel "wants to mislead you a little bit"); *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989). We presume that the jury followed the trial court's instruction to disregard.

We cannot hold under the record in this case that the third factor, the certainty of Appellant's conviction absent the prosecutor's improper argument, weighs heavily in favor of either side. Although we agree with Appellant that the evidence in this case was not overwhelming and that the medical evidence may have been—as the State put it—"the critical evidence in the case," we do not agree with Appellant that the prosecutor's comment, which improperly cast aspersion on the veracity of defense counsel with respect to the contents of the doctor's testimony, affected the outcome of this case. Appellant asserts that, if the credibility of the defense attorneys had not been "improperly undermined by the

6

State with his assertion that the defense attorneys were liars," then it could not "be said with any certainty that conviction would have been the result for Appellant." The jury heard the doctor's testimony relating to the medical evidence and, presumably, judged the weight and credibility of that evidence for itself. Furthermore, during its deliberations, the jury requested the doctor's medical report, and the exhibit containing that report was delivered to the jury. We hold that the error in this case was harmless under Rule 44.2(b) as applied through the *Mosley* factors for improper jury argument and that the argument was not so egregious as to warrant a mistrial.

However, as we stated in *Baker*:

> Although we have found no reversible error in connection with the State's jury argument, we are not to be taken to approve the argument in any way. As other courts have expressed, we fail to understand why prosecutors continue to make arguments of this nature. *See, e.g.*, *Wilson v. State*, 938 S.W.2d 57 (Tex. Crim. App. 1996), *abrogated on other grounds by Motilla v. State*, 78 S.W.3d 352, 356–57 & n.26 (Tex. Crim. App. 2002). That is especially so in the face of a plethora of cases in which the courts of this State consistently have held that such arguments clearly are out of bounds. We are not unmindful of the pace and stress of trial. However, one would think that, even in the "heat of battle," the risk of retrial would be caution enough to yield to cooler passions. The argument in this case is held to result in harmless error; that will not always be the case.

2012 WL 5988900, at *5. Appellant's first issue is overruled.

*Tattoo Evidence*

In his second issue, Appellant contends that the admission of evidence that he bore a "white pride" tattoo was irrelevant and substantially more prejudicial than probative. The record shows that Appellant objected under TEX. R. EVID. 403 when K.L.T., the first witness to testify at trial, began testifying about the defendants' unique identifying features, which for Baker was a facial scar and for

7

Appellant was a tattoo. After a discussion at the bench, the trial court overruled Appellant's objection and admitted into evidence a picture of one of Appellant's tattoos, the "white pride" tattoo that had assisted K.L.T. in identifying Appellant.

The State asserts that Appellant has not preserved this issue for review because the same or similar evidence was presented by other witnesses without objection. An objection to photographic evidence is waived if the same information contained in the photograph is conveyed to the jury in some other form. *Ford v. State*, 919 S.W.2d 107, 117 (Tex. Crim. App. 1996). A party must either object each time the complained-of evidence is offered or obtain a running objection. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). The admission of evidence over objection "will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling." *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998).

The record shows that Appellant did not request a running objection and that evidence of Appellant's tattoo was presented by other witnesses without objection. Officer Anna Sturgeon, the first officer to respond to K.L.T.'s call for help, testified that K.L.T. was traumatized when the officer arrived around 3:15 a.m. K.L.T. reported that she knew the first name of one of the suspects, "John," but did not know his last name or the name of the other suspect. Officer Sturgeon testified without objection that K.L.T. told her that "John" had "a tattoo on his upper right arm that says 'white power' in the shape of a cross." The picture of Appellant's tattoo shows that Appellant's upper arm had a tattoo with the words "WHITE PRIDE" in the shape of a cross. Officer Danny Hutchins, who helped arrest Baker and Appellant, later testified without objection that he had received descriptive information of the suspects that he was looking for; that information included the fact that one of the suspects had a scar on his face and one of the suspects "had a tattoo of white power" on him.

We note the difference between the words "power" and "pride." However, the descriptions of the tattoo were substantially similar to the photo. During trial, K.L.T. identified the photo of Appellant's tattoo as the same tattoo that "John" had. She had said earlier that she believed the tattoo said "white pride or white power."

The record reveals that Appellant did not object each time evidence of his tattoo was offered and that he did not obtain a running objection. Consequently, we cannot hold that the error, if any, in overruling Appellant's objection and admitting evidence of his tattoo constitutes reversible error. *See Valle*, 109 S.W.3d at 509; *Leday*, 983 S.W.2d at 718. Appellant's second issue is overruled.

*Prosecutor's Closing Argument*

In his final issue, Appellant argues that permitting the prosecutor to direct the jury's attention to K.L.T. during the prosecutor's closing argument at the guilt/innocence phase of trial affected Appellant's substantial rights. Appellant asserts that the prosecutor "gestured to [K.L.T.]'s present condition as she sat in the audience" and that he "directed a personal opinion comment to the alleged victim during closing argument." The State responds that Appellant failed to preserve this issue for review because Appellant did not object at trial. We agree.

The relevant portions of the record from the State's closing argument show the following:

> (To [K.L.T.]:) The one good move as a mother that you did, you should be proud of yourself for doing that because you looked out for your child and you gave him to his father.
>
> . . . .
>
> . . . You think of how many houses these guys had to get kicked out of that night. . . . [K.L.T.], after they raped her, as she struggled with them, because she can't fight back, she is not strong enough, she is beat down, she is battered, you can see that. She couldn't fight --

At that point, Appellant's attorney stated, "May the record reflect that when the prosecutor said 'You can see that,' he gesticulated with his head towards the alleged victim."

Appellant did not lodge any objection at trial either time the prosecutor directed the jury's attention to K.L.T. To preserve a complaint for appellate review, the complaint must first be made in the trial court by a timely request, objection, or motion. TEX. R. APP. P. 33.1(a); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). In *Cockrell*, the court specifically concluded, "[W]e hold a defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal." 933 S.W.2d at 89. Because Appellant did not object at trial, he failed to preserve for appellate review the complaints that he urges in his third issue. Appellant's third issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.


TERRY McCALL
JUSTICE


August 15, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.