**Opinion issued November 14, 2013**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-12-00251-CR**

———————————

**TROY WILLIAMS II, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 182nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1248664**

**DISSENTING OPINION**

Here we go yet again—an appellate court admonishes attorneys not to engage in improper jury arguments, but the court itself actually glosses over the egregious nature of the complained-of argument and the actual harm caused by

such arguments, not only to those accused of criminal offenses, but to the very administration of justice in Texas. Indeed, the majority's opinion in this case will actually encourage such improper behavior and ensure that it continues. Accordingly, I respectfully dissent.

The Texas Court of Criminal Appeals has long "maintain[ed] a *special concern* for final arguments that result in uninvited and unsubstantiated accusation of improper conduct directed at a defendant's attorney" and emphasized that, "[i]n its *most egregious form*, this kind of argument . . . involve[s] accusations of manufactured evidence." *Mosley v. State*, 983 S.W.2d 249, 258 (Tex. Crim. App. 1998) (emphasis added). Here, however, the majority asserts that just such an argument is "not so egregious" and "not severe."

The majority errs in concluding that the trial court did not err in denying the motion of appellant, Troy Williams, II, for a mistrial. Appellant made his motion in response to the State's argument to the jury that his trial counsel abused the State's open file policy with the intent to access the State's evidence and then, in collaboration with appellant, fabricate a "whole defense" to fit the State's evidence in the name of winning a "game."

Specifically, appellant complains of the following uninvited and unsubstantiated accusations made to the jury by the prosecutor below:

> What did the defendant have access to before trial? He's had years to craft a story. As we said in voir dire, we have an *open file policy*.

2

*They* *have access* to copies of police reports, statements, and photos. *They* *can build a whole defense that fits everything that we have.* *That's just how the game is.* It doesn't mean *they* get credit for it *or you believe it*.

(Emphasis added.) After the trial court sustained appellant's objection to the improper argument, it merely instructed the jury to "[d]isregard the last comment made by the prosecutor" and overruled appellant's motion for mistrial.

The law provides for, and presumes, a fair trial free from improper argument by the State. *Thompson v. State*, 89 S.W.3d 843, 850 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (citing *Long v. State*, 823 S.W.2d 259, 267 (Tex. Crim. App. 1991)). Permissible jury argument generally falls into one of four areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answers to the arguments of opposing counsel; or (4) pleas for law enforcement. *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010); *Cannady v. State*, 11 S.W.3d 205, 213 (Tex. Crim. App. 2000).

It has long been established that the State may not use closing argument to place matters before the jury that are outside the record and prejudicial to the accused. *Thompson*, 89 S.W.3d at 850 (citing *Everett v. State*, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986)). Arguments referencing matters that are not in evidence and may not be inferred from the evidence are usually "designed to arouse the passion and prejudices of the jury and as such are highly inappropriate." *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990). "When a prosecutor

3

makes uninvited and unsubstantiated accusations of improper conduct directed toward a defendant's attorney, in an attempt to prejudice the jury against the defendant, courts refer to this as striking a defendant over the shoulders of his counsel." *Phillips v. State,* 130 S.W.3d 343, 355 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (op. on reh'g). A prosecutor risks improperly striking at a defendant over the shoulders of counsel when the prosecutor's argument refers to defense counsel personally and explicitly impugns defense counsel's character. *Mosley*, 983 S.W.2d at 259; *Davis v. State*, 268 S.W.3d 683, 712 (Tex. App.—Fort Worth 2008, pet. ref'd).

For example, a prosecutor impermissibly strikes at a defendant over his counsel's shoulders when "the prosecutor argues that defense counsel has manufactured evidence, suborned perjury, accepted stolen money, or represented criminals." *Phillips*, 130 S.W.3d at 355; *see Washington v. State,* 822 S.W.2d 110, 119 (Tex. App.—Waco 1991), *rev'd on other grounds,* 856 S.W.2d 184 (Tex. Crim. App. 1993); *see also Fuentes v. State,* 664 S.W.2d 333, 335 (Tex. Crim. App. [Panel Op.] 1984) (holding that prosecutor may not accuse defense counsel of bad faith or insincerity or discuss counsel's "usual antics"); *Anderson v. State,* 525 S.W.2d 20, 22 (Tex. Crim. App. 1975) (holding that arguments that criticize defense counsel, including that defense counsel "did not have guts enough" to argue innocence of his client, and request for more time to argue because of

4

defense counsel's "frivolous objections" were improper). The prohibition of these types of arguments protects defendants from improper prosecutorial character attacks on defense counsel. *Davis*, 268 S.W.3d at 713. And the prohibition serves to uphold the integrity of the fact-finding process and ensure public confidence that the verdicts of juries, especially criminal convictions, are based on proven facts, not emotions and prejudice roused during final argument.

In sustaining appellant's objection to the prosecutor's improper argument, the trial court correctly concluded that the prosecutor's accusations that appellant's trial counsel had abused the State's open file policy to access evidence and, in collaboration with appellant, fabricate a "whole defense" to "fit[]" the State's evidence in the name of winning a "game," were improper. The majority agrees, and it even recognizes that "arguments attacking defense counsel are improper *because they unfairly inflame the jury against the accused*." *Wilson v. State*, 7 S.W.3d 136, 147 (Tex. Crim. App. 1999) (emphasis added).

Regardless, the majority goes on to mischaracterize the State's uninvited and unsupported accusations as "not so egregious" and "not severe." It further erroneously concludes, thus, that the harm from the prosecutor's accusations was curable by the trial court's cursory instruction to disregard. This stands in stark contrast to the well-established law as recognized by the court of criminal appeals, which has clearly explained that, in their most "egregious form," accusations of

5

improper conduct directed at a defendant's attorney "involve accusations of manufactured evidence." *Mosley*, 983 S.W.2d at 258.

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). However, where the prejudice from an improper argument is incurable, a trial court has no discretion but to grant the defendant a mistrial. *Id.* The harm arising from an improper jury argument is incurable if the argument (1) is extreme, improper, injects new and harmful facts into the case, or violates a mandatory statutory provision and (2) as a result, is so inflammatory that its prejudicial effect cannot reasonably be cured by an instruction to disregard. *Thompson*, 89 S.W.3d at 851 (citing *Long*, 823 S.W.2d at 267).

Generally, a mistrial is "the appropriate remedy" when "the objectionable events 'are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant.'" *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011) (quoting *Young v. State,* 137 S.W.3d 65, 71 (Tex. Crim. App. 2004)). Accordingly, in determining whether the trial court abused its discretion in denying appellant's motion for mistrial on the basis of the State's improper argument, this Court is to consider the "*Mosley*" factors and "balance . . . : (1) [the] severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) [the] measures adopted to cure

6

the misconduct (the efficacy of any cautionary instruction by the judge), and (3) [the] certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction)." *Archie*, 340 S.W.3d at 739 (*citing Mosley*, 983 S.W.2d at 259).

In conducting this review, the court of criminal appeals has expressly explained that we should have "*a special concern* for final arguments that result in uninvited and unsubstantiated accusation[s] of improper conduct directed at a defendant's attorney." *See Orona v. State*, 791 S.W.2d 125, 128 (Tex. Crim. App. 1990) (emphasis added). And, as noted by the court, "[t]o protect defendants from unwarranted attacks," it "has held such argument to be reversible error *even if a trial court sustains an objection and instructs the jury to disregard.*" *Id*. (emphasis added). Thus, as noted above, and contrary to the majority's assertion that the prosecutor's accusations here were "not so egregious" and "not severe," it has long been noted in Texas law that arguments in which a prosecutor makes accusations that a defendant's attorney manufactured evidence are indeed "most egregious." *Mosley*, 983 S.W.2d at 258–59.

In a very odd pivot, the majority, in support of its assertion that the prosecutor's accusations against appellant's trial counsel were "not so egregious" and "not severe," focuses on the fact that appellant himself admitted that he was not truthful when he initially told police officers about how he had killed the

7

complainant because he was ashamed to admit that he had been sexually assaulted. The majority argues that because the State acted within bounds in attacking the credibility of appellant, the severity of the State's attack on appellant's trial counsel must not have been "extremely inflammatory." And the majority downplays the State's use of the word "they" in making its unsubstantiated accusations against appellant's trial counsel and appellant as follows:

> The first sentence of the [accusations] refers to "the defendant" having access to the State's open file. The prosecutor said next that "[h]e's had years to craft a story" based on access to that file. Both statements are supported by the evidence. The three sentences that follow, in which the prosecutor improperly used "they" instead of "he," would have been permissible if the prosecutor had referred to [appellant] alone.[] Further, the State did not flagrantly refer to [appellant's] attorney directly . . . .

According to the majority, the prosecutor's accusations about the involvement of appellant's trial counsel in the fabrication of a "whole defense," based on abuse of the State's open file policy, were not "so egregious" and "not severe" because the State, in part of its argument, referred to the defendant individually.

The majority's logic is not only invalid in that its conclusion does not at all follow from its stated premise, it is also unsound because its premise is false: the simple fact is that the only way that appellant himself could have had any access to the State's open file was through its availability to appellant's trial counsel. No matter how the majority parses the complained-of accusations, the State, *in no uncertain terms*, accused appellant's trial counsel of abusing the State's open file

8

policy with the intent to access the State's evidence and then, in collaboration with appellant, fabricate a "whole defense" to "fit[]" the State's evidence in the name of winning a "game."

It must be emphasized that the State has not, in either its briefing or oral argument, argued to this Court that the prosecutor below did not mean anything other than what he actually accused appellant's trial counsel of doing. To imply that the prosecutor somehow meant to limit his accusations to appellant and the evidence by inadvertently mixing his pronouns, rather than make the uninvited and unsubstantiated allegations about the conduct of appellant's trial counsel, is not in accord with reality. The uncontroverted fact is that the prosecutor said what he actually said as demonstrated by the record.

Regardless, even if the majority is somehow capable of gleaning for the State on appeal what the prosecutor actually meant to say to the jury, it is what he said, and how it affected the jury, that is critical to an intellectually honest analysis. Here, again, is what the prosecutor below actually said:

> What did the defendant have access to before trial? He's had years to craft a story. As we said in voir dire, we have an *open file policy*. **They** *have access* to copies of police reports, statements, and photos. **They** *can build a whole defense that fits everything that we have. That's just how the game is*. It doesn't mean **they** get credit for it *or you believe it*.

(Emphasis added.) And, as conceded by the State during oral argument, the person who actually had physical access to its open file was appellant's trial counsel.

9

Thus, it is not unreasonable to accept the record as it is and take the prosecutor at his word when he made to the jury his accusations against appellant's trial counsel.

It is crystal clear that the prosecutor, by using the term "they," directed his comments at appellant *and* his trial counsel and asserted that "they" "buil[t]" their "whole defense" around the evidence provided through the State's open file policy. The prosecutor further compounded the egregious nature of his comments by referring to appellant's trial counsel as treating the trial process as a "game," a comment ignored by the majority.

The State's uninvited and unsubstantiated accusations against appellant's trial counsel prejudiced appellant as a direct attack on his counsel's integrity. *See, e.g.*, *McMurrough v. State*, 995 S.W.2d 944, 947–48 (Tex. App.—Fort Worth 1999, no pet.) (holding that trial court erred in denying defendant's request for mistrial where prosecutor "insinuated that [defendant's] counsel improperly invented" his defense); *Sunday v. State*, 745 S.W.2d 436, 440 (Tex. App.—Beaumont 1988, pet. ref'd) (holding mistrial required where prosecutor noted that defendant asserted his defensive theory only after hiring an attorney, insinuating that defense counsel "made up" defensive theory); *see also Standard Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 840 (Tex. 1979) (holding that counsel's "unsupported charge of perjury" directed at opposing counsel was "incurable," demonstrated "an

affront to the court and the equality it must portray," and must be "dealt with harshly").

In regard to the first *Mosley* factor, the prosecutor's misconduct, in implying that appellant's trial counsel had abused the State's open file policy and collaborated with the defendant to "build a whole defense" to "fit[]" the State's evidence to win a "game" was especially egregious. *See Mosley*, 983 S.W.2d at 258 (citing *Orona*, 791 S.W.2d at 128). It strains credulity to say otherwise, especially given that we, as an appellate court, are supposed to have a "special concern" about such unsubstantiated accusations against defense counsel. *See id.*

Secondly, the trial court's cursory instruction to disregard the State's accusations against appellant's trial counsel could have little or no efficacy in light of the egregious nature of the accusations, i.e., asserting that appellant's trial counsel actually worked with appellant to abuse the State's open file policy and worked with him to manufacture a defense, treating the trial process as a mere "game" to be won. The trial court's boiler-plate instruction to the jury that "what the lawyer says is not evidence . . ." is equally unavailing. Here, the State did not merely attack the credibility of appellant as a witness based on the evidence. In making its unfounded accusations about the involvement of appellant's trial counsel in a criminal act, the State gutted counsel's credibility in front of the jury and essentially deprived appellant of an effective advocate. Thus, any "curative

11

instructions [were] not likely to prevent the jury from being unfairly prejudiced against the defendant." *See Archie*, 340 S.W.3d at 739.

Finally, in regard to the third *Mosley* factor, the central factual issue presented to the jury was whether appellant killed the complainant in self-defense in response to a sexual assault. This was *the* hotly contested issue for the jury, and the State's conviction of appellant was dependent upon the jury's rejection of appellant's recantation of his initial statements to police officers. Here, it is important to note that just because appellant's credibility was in issue and he admitted on the witness stand that his initial statements to law enforcement were not true and not believable, does not mean that the jury was somehow bound to reject his trial testimony regarding his defense. Thus, his conviction was in no way "certain." However, by dragging the reputation of appellant's trial counsel into its argument and actually accusing him of working with appellant to abuse the State's open file policy and "build a whole defense that fits everything we have" in the name of winning a "game," the State essentially insured that the jury would not at all seriously consider appellant's defense or anything his trial counsel had to say.

Here, unlike in *Orona* and *Mosley*, in which the court of criminal appeals ultimately upheld the defendant's convictions, the State did not merely assert to the jury that appellant's trial counsel knew "how to argue to get people off" or create "rabbit trail[s]." *Orona*, 791 S.W.2d at 127–28*; Mosley*, 983 S.W.2d at 258. Thus,

12

the majority's reliance on these cases to support its position is very much misplaced. Indeed, the contrast between what the Sate did in those cases and what the State did in this case well illuminates the merit of appellant's issue.

Given the severity of the State's misconduct, the cursory and ineffective curative measures of the trial court, and the absence of any certainty of conviction, the trial court erred in not granting appellant's motion for a mistrial.

**Conclusion**

I would hold that the improper and inflammatory jury argument made by the State was incurable and, thus, that it probably caused the rendition of an improper judgment. *See Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007) (stating that mistrial is "the only suitable remedy" when instruction to disregard objectionable occurrence could not "have had the desired effect, which is to enable the continuation of the trial by an impartial jury"). I would further hold that the trial court abused its discretion in denying appellant's motion for new trial. Accordingly, I would sustain appellant's third issue, reverse the judgment of the trial court, and remand the case for a new trial free from the State's improper argument.

The majority's decision to the contrary is in serious error and should be corrected by a higher court. *See* TEX. GOV'T CODE ANN. §22.001(a)(6) (Vernon 2004). Unless corrected, the majority's opinion will actually encourage more such

13

improper arguments, "for what is permitted is considered proper."  Roger D. Townsend, *Improper Jury Argument and Professionalism: Rethinking Standard Fire v. Reese*, 67 TEX. B.J. 448, 454 (2004).  If appellate courts are inclined to find such improper and inflammatory jury arguments to be curable, why not "take the gloves off," engage in such inflammatory displays, and bias and prejudice the jury against your opponent?  *See id.* at 452.  Importantly, although such "improper arguments work," they take a great toll on the public's perceptions of lawyers and our jury trial system. *Id*. at 453.

Improper arguments, especially those involving unsubstantiated accusations against opposing counsel, confirm for real jurors in real Texas courtrooms the worst caricatures of lawyers and our justice system that television and movies have to offer.  Ultimately, trial judges have the duty to enforce "law and order, as well as dignity, in their courtrooms."  *Id*. at 454.  And appellate justices also have important duties as illustrated by this case.  Judges and justices must take great care in preserving the integrity of the courts and the judicial process.  If we do not, who will?

As noted by Townsend,

> When [judges] abdicate [their] duty, professionalism suffers even more than when a lawyer makes an improper argument, for what is permitted is considered proper by the jury. *All judges who do not stop improper arguments*—and all trial lawyers who make improper arguments—have no business lamenting the public's low perception of lawyers. They need only look in the mirror.

*Id.* (emphasis added).


Terry Jennings
Justice

Panel consists of Justices Jennings, Brown, and Huddle.

Jennings, J., dissenting.

Publish.  *See* TEX. R. APP. P. 47.2(b).