**Frankie Roy James BALLARD a/k/a Jim Ballard, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 09–95–136CR.

Court of Appeals of Texas, Beaumont.

Submitted Dec. 19, 1996.

Decided May 21, 1997.

Thomas D. Glenn, Conroe, for appellant.

Daniel C. Rice, District Attorney, Gail Kikawa McConnell, Assistant District Attorney, Conroe, for appellee.

Before WALKER, C.J., and BURGESS, and STOVER, JJ.

## OPINION

STOVER, Justice.

Appellant was indicted for the offense of theft alleged to have occurred on June 23, 1993. Appellant pleaded not guilty. After a finding of guilt by the jury, the trial court assessed punishment at ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice and ordered restitution in the amount of $1,800. Appellant filed his motion for new trial which was overruled by the court. Appellant then timely filed his notice of appeal and affidavit of indigency.

In June of 1993 Willis Masters, owner of a donut shop in Montgomery County, desired to have his parking lot paved with asphalt and contacted Trans Texas Asphalt Services (TTAS). Appellant, an employee of TTAS came to Masters' business and gave Masters an estimate. Masters decided to enter into a contract with TTAS in the amount of $3,000 and agreed to give TTAS a down payment of $1,800, or 60 percent of the total price, to enable appellant to buy materials for the job. The contract was signed on June 23, 1993, and Masters gave appellant a check in the amount of $1,800 at that time. The check was cashed the same day.

In the following weeks Masters made approximately twenty-two calls to TTAS. Masters was able to talk to appellant only one time when appellant happened to answer the phone on a Saturday morning. On the other occasions, the phone had been answered by someone named Rita; appellant did not return any of those calls. In addition, appellant never performed the work, and none of the $1,800 down payment was refunded to Masters. Subsequently, Masters filed felony theft charges against appellant after it became apparent that no work was going to be performed and no money was returned to him.

Appellant brings forth one point of error: "The trial court erred when it allowed the admission of an extraneous offense that was too remote."

The State had the burden of showing appellant's intent to unlawfully appropriate Masters' money on June 23, 1993, and, in so doing, offered testimony regarding other similar transactions into evidence. The evidence of the four transactions revealed similar facts: a contract was made to pave the victim's property; appellant asked for and received half of the contract price to purchase the asphalt required; appellant cashed the victim's check on, or within a few days after, the date of the check; appellant promised the work would begin within a week; and appellant never completed the contract. The State put on four witnesses to the extraneous transactions: Sandra Welch, from whom appellant received a check for $3,500 on June 14, 1993; Lois Cates from whom appellant received a check for $450 on August 7, 1992; Lillian Clark from whom appellant received a check for $1,500 on May 15, 1992; and Kathy Morris from whom appellant received a check for $400 on June 19, 1987. The testimony of these four witnesses was offered as proof of intent, scheme, and plan.

When the State began calling its witnesses to prove up the extraneous offenses, appellant's counsel objected on the grounds that these were extraneous and irrelevant and more prejudicial than probative. The State informed the court the extraneous offenses all occurred within a year of the charged offense. After the court overruled appellant's objection, the State presented the testimony of Lillian Clark and Lois Cates. The next day, prior to the testimony of Kathy Morris, the State, having asked to approach the bench outside the presence of the jury, informed the court the State had made a mistake. Not all the extraneous offenses the State sought to present occurred within a year of the charged offense. The extraneous offense which involved Kathy Morris occurred in late 1987, six years prior to the instant offense. The record reveals the following colloquy:

[PROSECUTOR]: I'm sorry, Your Honor. I totally forgot. I believe I told you yesterday I thought all of these were within about a year. This one is older than a year, and I didn't want to mislead the Court.

THE COURT: How much older, 50 years older?

[PROSECUTOR]: Late 1987. It is within ten years. It is the same M.O. exactly.

THE COURT: Same M.O., but two years—

[PROSECUTOR]: It is a few years older.

[DEFENSE COUNSEL]: 1987 would be six years before this offense.

THE COURT: Man, that's a little remote, you know.

[PROSECUTOR]: That could go to the weight, Your Honor. Additionally—

THE COURT: It could go to the weight.

[CO–PROSECUTOR]: It is still—

THE COURT: It is a risk. It is a risk.

[PROSECUTOR]: It is still a pending job. The job has never been done.

THE COURT: It is exactly the same M.O. Is it paving?

[PROSECUTOR]: Yes, sir. No work at all has been done.

[DEFENSE COUNSEL]: The statute of limitations on both the civil and criminal has expired. She is here out of sour grapes. And it is way too remote.

THE COURT: All right. Overruled. I'll let it in. I'll let it in.

The State then called Kathy Morris, followed by Sandra Welch. At the close of all the evidence, appellant once again objected to the Morris transaction—this time citing a specific statute, TEX. PENAL CODE ANN. § 31.03(c)(1) (Vernon 1994), to support his claim of remoteness of the extraneous offense.

Your Honor, at this time I would like to move to strike the testimony of Kathy Morris. It was objected to prior to its introduction; and specifically, my objection was that the testimony was too remote in time. I believe that the testimony was being offered pursuant to Section 31.03, Subsection C–1 of the Penal Code in which states that "evidence that the actor has previously participated in recent transactions other than, but similar to, that which the prosecution is based is admissible for purposes of showing knowledge or intent."

The State reiterated that TEX.R.CRIM.EVID. 403 favors the admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial. The State argued that the factors of remoteness and similarity of an extraneous offense are important, not in and of themselves, but only as they bear on the relevancy and probative value of the offered evidence of extraneous offenses. Appellant made no further arguments and presented no case law; his objection was overruled.

■ Appellant asserts on appeal that TEX. PENAL CODE ANN. § 31.03(c), rather than TEX.R.CRIM.EVID. 404(b), governs admissibility of extraneous offenses in a theft case. We agree with that assessment. Section 31.03(c)(1) reads as follows:

(c) For purposes of Subsection (b):

(1) evidence that the actor has previously participated in recent transactions other than, but similar to, that which the prosecution is based is admissible for the purpose of showing knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not guilty;

Section 31.03(c)(1) is a specific statute pertaining to the admission of evidence of extraneous transactions in a theft case. Rule 404(b) is a general rule which applies to "evidence of other crimes, wrongs, or acts." It is not restricted to a case in which the charged offense is theft. We conclude the specific statute controls over the general rule in theft offenses. *See* TEX. GOV'T CODE ANN. § 311.026 (Vernon 1988). Furthermore, TEX. R.CRIM.EVID. 101(c) provides as follows:

Hierarchical governance shall be in the following order: the Constitution of the United States, those federal statutes which control states under the supremacy clause, the Constitution of Texas, the Code of Criminal Procedure and the Penal Code,

civil statutes, these rules [Texas Rules of Criminal Evidence], the common law of England....

According to Rule 101(c), the Texas Penal Code ranks above the Texas Rules of Criminal Evidence in "hierarchical governance"; consequently, Section 31.03(c)(1) takes precedence over Rule 404(b), at least when the charged offense is theft, and the elements sought to be proved by the extraneous offenses are knowledge or intent.

■ The admission of extraneous acts under Section 31.03(c)(1) requires a "recent" transaction. Appellant urges the extraneous transaction regarding Morris does not meet that requirement. We agree. Although we have found no case defining "recent" as it is used in Section 31.03(c)(1), we conclude that the six year time span between the charged offense and the extraneous transaction in the instant case is not recent. We recognize there were three other intervening transactions between the charged offense and the transaction objected to by Ballard; however, a five year time gap still existed between the Morris transaction (June 1987) and the next-in-time transaction, that of Lillian Clark in May 1992.

The dictionary defines "recent" as "of or belonging to the present period or the very near past." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1894 (1986). Although the dictionary is not specific in its definition, nonetheless, we conclude under common understanding and usage, six years is not within the meaning of the term "recent." [1] The Morris transaction cannot be said to have occurred at a time "not long before" the charged offense. We find the transaction shown by the testimony of Kathy Morris is not a recent transaction and should not have been admitted into evidence.

■ Although the trial court erred in admitting the testimony regarding the Morris extraneous transaction, the error was harmless. See TEX.R.APP.P. 81(b)(2). We must reverse the judgment if there is a reasonable possibility the improper evidence might have contributed to appellant's conviction. See Denton v. State, 920 S.W.2d 311, 312 (Tex.Crim.App.1996) (citing and quoting Orona v. State, 791 S.W.2d 125, 128 (Tex.Crim.App.1990)). In applying this standard of review, we do not look for overwhelming evidence of guilt because it is improper for an appellate court to substitute its judgment for that of the factfinder. See Harris v. State, 790 S.W.2d 568, 585 (Tex.Crim.App. 1989). Instead, we focus on the error and its possible impact on the conviction or punishment. Id. at 585–586. If the error was of a magnitude that it disrupted the factfinder's orderly evaluation of the evidence, no matter how overwhelming it might have been, then the conviction is tainted. Id. at 588.

In the instant case, the error in admitting the fourth extraneous transaction had little impact on the jury's evaluation of the evidence; the extraneous transaction involving Morris followed the same pattern as the other three transactions and possessed no distinguishing characteristics which would make it more prejudicial. The integrity of the trial process was not affected by the evidence of the 1987 extraneous act. We conclude any error in the admission of Kathy Morris' testimony is harmless. Appellant's point of error is overruled.

The judgment and sentence of the trial court below are affirmed.

AFFIRMED.

---

**1.** We have found no *per se* rule regarding what is recent, and we make none.