

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00335-CR

———————————————

JOSE LUNA, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 213th District Court
Tarrant County, Texas
Trial Court No. 1479170D

---

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

This appeal arises from a theft prosecution of a contractor who took money from homeowners but never performed the promised services. A jury convicted Jose Luna of theft of between $1,500 and $20,000, and the trial court assessed his punishment at nine years' confinement. Luna brings three complaints on appeal: (1) the evidence is insufficient to support his conviction; (2) the trial court reversibly erred by admitting extraneous offense evidence at guilt–innocence; and (3) because the indictment failed to state a crime, the trial court did not have jurisdiction. We affirm.

**Indictment Sufficiently Pleaded Offense; Thus, Trial Court Had Jurisdiction**

In his third issue,[1] Luna argues that the indictment failed to state a specific offense; thus, it failed to meet the constitutional definition of an indictment and deprived the trial court of subject matter jurisdiction. According to Luna, he can raise this argument for the first time on appeal. We agree. *See Smith v. State*, 309 S.W.3d 10, 16–18 (Tex. Crim. App. 2010).

To determine if a charging instrument alleges an offense, we must decide whether the allegations in it are clear and specific enough that a person can identify the offense alleged, i.e., the penal statute under which the State intends to prosecute the defendant. *Teal v. State*, 230 S.W.3d 172, 180 (Tex. Crim. App. 2007); *Duron v.*

---

[1]We address the issues out of order for ease of discussion, and we dispense with a separate background section because we discuss the facts in detail in our review of the evidence's sufficiency.

*State*, 956 S.W.2d 547, 550–51 (Tex. Crim. App. 1997). If the allegations are sufficiently clear and specific, the indictment is sufficient to confer subject matter jurisdiction. *Teal*, 230 S.W.3d at 180. "Stated another way: Can the trial court (and appellate courts who give deference to the trial court's assessment) and the defendant identify what penal code provision is alleged and is that penal code provision one that vests jurisdiction in the trial court?" *Id.*

The version of Penal Code Section 31.03 under which Luna was prosecuted provided that (1) "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property," (2) "[a]ppropriation of property is unlawful if . . . it is without the owner's effective consent," and (3) such an offense is a state jail felony if "the value of the property stolen is $1,500 or more but less than $20,000." Tex. Penal Code Ann. § 31.03(a), (b)(2); Act of May 29, 2011, 82nd Leg., R.S., ch. 1234, § 21, 2011 Tex. Sess. Law Serv. 3301, 3309–10 (amended 2017) (current version at Tex. Penal Code Ann. § 31.03(e)(4)(A)). Penal Code Section 31.09 provides that when a person commits theft in accordance with one scheme or continuing course of conduct, "whether from the same or several sources," the multiple appropriations may be considered one offense, and the amounts may be aggregated to determine the level of offense. Tex. Penal Code Ann. § 31.09.

The indictment in this case alleged that Luna,

> pursuant to one scheme or continuing course of conduct, unlawfully appropriate[d] the property hereinafter listed by acquiring or otherwise exercising control over said property with the intent to deprive the

3

owners, named below[,] of the property, and the aggregate value of all the property appropriated was more than $1500, but less than $20,000, and the date, property appropriated and the owners of said property is as follows:

2-28-14, Money, Dao Le,
3-03-14, Money, Dao Le,
3-10-14, Money, Sharon Johnson[.]

According to Luna, although the indictment references a scheme or continuing course of conduct, it is defective because it does not specify how he engaged in a scheme or continuing course of conduct, and it does not state how much money he allegedly stole from each of the two complainants. But the indictment (1) adequately notified Luna that the State was seeking to aggregate the amounts taken from two different specified complainants on three different specified dates under one scheme or continuing course of conduct and (2) listed the minimum and maximum amounts alleged to have been stolen for determining the potential range of punishment. These allegations were sufficiently specific to allow Luna to discern the offense alleged; thus, the indictment was not so defective that it deprived the trial court of jurisdiction. *See Kellar v. State*, 108 S.W.3d 311, 313 (Tex. Crim. App. 2003); *see also Berg v. State*, 747 S.W.2d 800, 809 (Tex. Crim. App. 1984) (op. on reh'g) (holding that Section 31.03 theft indictment, not relying on Section 31.09, need only allege that the person charged unlawfully appropriated personal property with the intent to deprive the owner of that property).

We overrule Luna's third issue.

4

## Sufficiency of the Evidence

Luna contends in his first issue that the evidence is insufficient to show that he appropriated property from the complainants because all the money was given to a man named "Jay" and there was no proof that Luna ever received any money from Jay. He also contends that there was no evidence that he never intended to do the agreed-upon work.

### Standard of Review

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316, 99 S. Ct. 2781, 2787 (1979); *see* U.S. Const. amend. XIV. To determine whether the State met this burden, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). When the factfinder must have made inferences from the evidence, we determine whether the necessary inferences were reasonable based on the evidence's cumulative force. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences

in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–49.

**Dao Le**

Le testified that in February 2014, she contacted F1 Contractors to repair a home she was selling in Euless. She got the contractor's name from her realtor, and when she called she talked to, and later texted with, "Jay."[2] They agreed to a price of $180 with a $140 down payment. "Jay" gave Le a bank account name and number so that she could drive to the bank and deposit the $140 directly; the account she deposited the money into was in Luna's name.[3] The work was to be completed by March 8 or 9, 2014. Le got an offer to buy the house on the 8th, but when she drove by the house, no work had been done. She tried to contact "Jay" but got no response. Her realtor was then able to contact "Jay," who promised that the repairs would be done before the home inspection on March 11. The repairs were not completed by the inspection time, and the inspector noted in his report the broken items that were supposed to have been repaired.

Le spoke with "Jay" again on the 13th and asked him to make additional repairs noted by the inspector. She paid him $300, which she also deposited directly into Luna's account. The repairs were to be completed by March 14 because the sale's

---

[2]Although the evidence showed that Luna had an associate who went by the name Jay, Luna referred to himself with Le as Jay.

[3]Le's realtor signed a contract with "Jay," but Le never met him in person.

closing was scheduled for March 21. The work was not done, and "Jay" would not respond to messages from Le or her realtor. Le had to pay someone else to complete the work.

**Sharon Johnson**

Johnson needed work done on some of her income-producing properties, so she responded to an F1 Contractor's email that she believed was targeted to realtors. She talked to Luna, who told her that he would contact her via FaceTime at the duplex she owned, look at the areas that needed work, and give her an estimate. She showed Luna her property via a FaceTime call on March 5, 2014, and he gave her an estimate for the work. But she did not give him a check until she met with his associate, Jay, on March 10, 2014. She wrote the check to Jose Luna, which she questioned because it was not the company's name, but Jay told her to make out the check that way. The check, which she had designated "Deposit only," cleared the same day.

Although work was supposed to start a couple of days after payment, no work was done. When Johnson contacted Luna, he told her "[t]hat Jay had fallen off the grid and he couldn't find him." She called Luna again after some time had passed, and he told her "not to worry, that . . . he would do the job, and everything would be fine." Johnson finally had to report Luna to the police because he never did any of the promised work.

**Detective Whitlock**

North Richland Hills police detective Eric Whitlock testified that he was assigned to investigate Johnson's report on March 25, 2014. He initially was able to access a website for F1 Contractors, but when he tried to access it a second time, it was no longer valid. He determined that F1 Contractors, although purporting to have an address in Dallas, had no City of Dallas licenses and was not registered with the City of Dallas. Whitlock testified about how Johnson had identified Luna in a photo lineup.

While investigating, Whitlock discovered what had happened to Le. He also subpoenaed the bank records for the account into which Johnson's check was deposited. He matched the driver's license and birthdate information from the account to Luna. He also saw that Le's $300 check and Johnson's $4,800 check had been deposited into that account. Whitlock also scrutinized the debit withdrawals from the account: only two—$238 and $28.68—were for a home improvement store, and those charges were made before the Johnson and Le deposits. The majority of the rest were for "personal entertainment," such as liquor and clothing, and were made in other states.

Whitlock could not find Jay, whom he identified as Jamael Bradley, but he believed Luna was the "primary offender" because the full amounts of Le's $300 and Johnson's $4,800 checks were deposited into Luna's account. Luna's name was the only one associated with the account. Nothing in his investigation showed that Jay

8

kept any of those funds for himself or that money was transferred from Luna's account to any other account. Whitlock's investigation also showed that someone had created additional websites—F1 Pro, F1 Build, and "all other sorts of variations of the original name."

Whitlock discovered other people from whom Luna had taken money or property for work he never performed. Using a photograph of a vehicle driven by Jay (taken by Johnson's boyfriend), Whitlock discovered that Luna had done something similar to Lori Ward, Lisa Hildinger, and Ronald Weber.[4]

Weber testified that in January 2014 he contacted Efficient Contractors to replace carpet, repair walls, and paint to prepare his home for sale "by a certain time"; he spoke with Luna.[5] Weber set up a meeting with Luna, but a different person showed up instead: a "[y]oung guy, about 25, tall, thin African American." The man carried a tablet, through which Weber communicated with Luna via video conference. That day, Weber and Luna settled on a total price, including a down payment of $1,500.

The next night, Weber wrote a check for that amount to "Jose Luna" and put it under his doormat; the check was gone the next morning. Two days later, the check

---

[4]Although Luna challenges the admission of the following evidence in his second issue, we consider it in our sufficiency review because we have determined that the trial court did not abuse its discretion by admitting it.

[5]All three extraneous-offense witnesses testified that Luna called himself either Luna or Joe Moon, interchangeably.

9

cleared Weber's bank. A copy of the cancelled check was admitted into evidence; it showed that the check had been deposited into Luna's bank account.

Luna never did any of the agreed-upon work. Initially, he did not respond to Weber's phone calls and voice mails, but when Weber called him from an anonymous number, Luna answered and told Weber he could not do the work according to the agreed-upon schedule. Luna asked to reschedule for several weeks to a month later, but Weber told him that would not work with his schedule and asked for a refund. Luna initially refused to give Weber a refund, but he later texted Weber and promised to write him a check for the full amount. Weber never received a check from Luna.

Lisa Hildinger testified that she contacted Efficient Contractors in January 2014 to replace windows at a home she intended to move into. She talked to Luna and scheduled a date to meet with him; the "project manager" showed up instead, and she spoke to Luna via FaceTime. Luna quoted her a price for the work and asked for the entire amount up front; he also refused to take a credit card. Hildinger wrote a check for half the amount instead and gave it to the project manager that day. She then got nervous and called her bank to try to stop payment, but the check had been cashed about a half hour after the project manager left her.

Although Luna emailed Hildinger that the windows would be installed in February, he stopped answering her calls. Hildinger was able to get Luna to talk to her again by telling him she wanted an estimate for additional work. Again, the project manager met with her, and she spoke to Luna via FaceTime. Luna told her the

10

windows would be delayed for five days from his original estimated installment date. She never heard from Luna again, and he never performed any work. Hildinger reported Luna to the police, and he was charged in Denton County. In October 2017, Hildinger agreed with prosecutors to drop the charges in exchange for Luna's repaying her.

Lori Ward, a realtor and house flipper, testified that in early September 2013 she contacted Luna after getting an "e-blast"; she was considering adding an addition to her personal home. He met with her the next day and gave her an estimate. Luna was driving a sports car, and Ward asked him why he did not have a truck; he said he had wrecked his truck, and the sports car was a rental. As a down payment, she offered him either a truck or Ford Explorer, both of which her husband was selling, and he chose the Explorer. Her husband was eager to sell both, so they let Luna—whom she verified by his driver's license—take the Explorer with him that day. The trial court admitted a picture that Ward had taken of Luna's driver's license the day she met with him. Three days after their initial meeting, Luna brought a CAD drawing to her house and asked for a $4,200 down payment so that he could buy supplies; she wrote him a check, which cleared her bank the same day. Although the work was supposed to be finished by October 30, Luna did not have the plans approved by the city until November. Over the next several months, he gave Ward varying excuses for the delay in beginning work. Although some workers did "set the form boards and

11

put the rebar in" in January, Luna did not do any other work.[6] He stopped communicating with Ward in February 2014. By contacting the Plano police, she was able to get her Explorer back but not the $4,200.

**Analysis**

Luna argues on appeal that the evidence is insufficient because all the evidence shows that Jay received the checks and there is no direct proof of who made the withdrawals from Luna's account. He also contends there is no proof that he lacked the intent to complete the work.

The State's evidence was circumstantial. But circumstantial evidence is as probative as direct evidence in establishing guilt. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). The jury could have reasonably inferred an intent to appropriate property from Luna's pattern of estimating a price for work, obtaining as much money up front as quickly as possible—whether personally or through an emissary—avoiding contact and failing to perform work after receiving the money, and spending the money on items unrelated to materials related to that work.[7] All the evidence shows that Le's $300 and Johnson's $4,800 were deposited into an account associated with Luna by driver's license and birthdate. We conclude that the evidence

---

[6]Two different workers threatened to put liens on her house for the work done because Luna had not paid them.

[7]"In a theft case arising from a contract, the State must prove that the accused intended to deprive the owner of the property when it was taken." *Johnson v. State*, 560 S.W.3d 224, 227 (Tex. Crim. App. 2018).

was sufficient to support the conviction. *See Johnson v. State*, 560 S.W.3d 224, 229–30 (Tex. Crim. App. 2018).

We overrule Luna's first issue.

## Extraneous Offense Admissible

In his second issue, Luna challenges the trial court's admission of his similar extraneous offenses against Weber, Hildinger, and Ward. According to Luna, these incidents were not "recent transactions" contemplated by Penal Code Section 31.03(c), nor were they admissible for any proper purpose under Rule 404(b): "the transactions were too remote in time and simply indicate that a business man is facing some hard times."[8] Tex. Penal Code Ann. § 31.03(c); Tex. R. Evid. 404(b).

Evidence that a defendant has committed "crimes, wrongs, or . . . acts" other than the charged offense is not admissible at guilt–innocence to prove character conformity. *See, e.g.*, Tex. R. Evid. 404(b)(1); *Montgomery v. State*, 810 S.W.2d 372, 386 (Tex. 1991) (op. on reh'g). But such evidence may be admissible for non-character-conformity purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b).

---

[8]Luna objected to the admission of the evidence during a hearing outside the jury's presence. Specifically, he objected that the prior acts were too remote in time *from the time of trial*, not the time of the alleged offense, to be admissible under Section 31.03(c) and that the circumstances were too different, especially as to Ward, to be admissible under Rule 404(b). We will address his complaints to the extent they comport with his trial objections. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) ("In determining whether a complaint on appeal comports with a complaint made at trial, we look to the context of the objection and the shared understanding of the parties at the time.").

And Penal Code Section 31.03(c) more specifically provides that to prove appropriation without consent in theft cases, "evidence that the actor has previously participated in recent transactions other than, but similar to," the charged offense "is admissible for the purpose of showing knowledge or intent." Tex. Penal Code Ann. § 31.03(c). The requirement that a similar transaction be "recent" refers to the extraneous act's proximity in time to the charged offense, not to the trial. *See Lopez v. State*, 316 S.W.3d 669, 678 (Tex. App.—Eastland 2010, no pet.); *Benson v. State*, 240 S.W.3d 478, 484 (Tex. App.—Eastland 2007, pet. ref'd); *Ballard v. State*, 945 S.W.2d 902, 905 (Tex. App.—Beaumont 1997, no pet.); *see also Hegar v. State*, 11 S.W.3d 290, 297 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (noting that Section 31.03(c) "appears to be limited to recent transactions *prior to* the charged offense"), *criticized in part on other grounds by Jennings v. State*, 302 S.W.3d 306 (Tex. Crim. App. 2010).

All of these other transactions occurred within several months of the charged offense and in close proximity to each other. The manner in which Luna obtained money from all five of these individuals during a relatively short six-month period—without completing any appreciable work[9]—shows a pattern of conduct making it more likely that he never intended to perform the work he promised to do. Thus, the trial court did not abuse its discretion by admitting the evidence under Section 31.03(c).

---

[9]Even though subcontractors performed some work at Ward's house, Luna never paid them for that work.

Because we conclude that the trial court properly admitted the evidence under Section 31.03(c), we need not also address whether it was admissible under Rule 404(b). *See* Tex. R. App. P. 47.1; *Daugherty v. State*, 260 S.W.3d 161, 162 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd). We overrule Luna's second issue.

## Conclusion

Because we have overruled all of Luna's issues, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: December 19, 2019